# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 05-534


**STATE OF LOUISIANA**

**VERSUS**

**DAVID JAMES PULLIAM**


**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 03-563
HONORABLE ALLEN A. KRAKE, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL
JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and J. David Painter, Judges.


**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**


**David E. Stone**
**Gary E. Proctor**
**Attorney At Law**
**P. O. Box 165**
**Alexandria, LA 71309**
**(318) 445-4601**
**Counsel for Defendant/Appellant:**
**David James Pulliam**
**James Patrick Lemoine**
**District Attorney**
**James D. White, Jr.**

**Assistant District Attorney**
**35th Judicial District Court**
**P. O. Box 309**
**Colfax, LA 71417**
**(318) 627-3205**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**EZELL, JUDGE.**

On September 2, 2003, the Defendant, David James Pulliam, was charged by bill of information with operating a motor vehicle while intoxicated, third offense, a violation of La.R.S. 14:98(D). On February 3, 2005, the Defendant pled guilty to the offense as charged, while preserving his rights to appeal under *State v. Crosby*, 338 So.2d 584 (La.1976). After his plea was accepted by the court, the Defendant was sentenced to pay a fine of two thousand dollars and to serve two years at hard labor. Thirty days of the sentence were to be served without benefit of parole, probation, or suspension of sentence; the remainder of the sentence was suspended; and the Defendant was ordered to serve two years supervised probation. Further, the Defendant was ordered to serve, as a condition of his probation, a six-month term of home incarceration with electronic monitoring, and was ordered to operate an automobile fitted with an electronic interlock device.

The Defendant is now before this court seeking review of the trial court's denial of his motion to suppress. We find that the trial court's denial of the motion to suppress was not in error, and therefore, the Defendant's conviction is affirmed. We also find that the sentence in this case is an illegal sentence and we, therefore, vacate the sentence and remand for resentencing pursuant to La.Code Crim.P. art. 881.4.

## FACTS

On May 2, 2003, the Louisiana State Police conducted a seat belt checkpoint in Grant Parish. The Defendant drove his automobile into the area of the checkpoint, and a state trooper observed that he was not wearing his seat belt. The trooper ordered him to stop his car by means of a hand signal, and the Defendant pulled to the side of the road. After the Defendant stopped his car, the trooper instructed him to exit the vehicle; when he did so, the trooper suspected the Defendant was impaired.

1

The trooper then advised the Defendant of his rights and told him that he was under arrest.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there are several errors patent involving the sentence imposed.

In reviewing the present sentence for legality, we discovered that it is unclear under what sentencing provision the Defendant should have been sentenced. The Defendant committed the DWI offense on May 3, 2003, and pled guilty on February 3, 2005. The penalty provision for DWIs received major amendments in 2001. Those amendments were in effect when the Defendant committed the present offense on May 3, 2003. The DWI penalty provisions were again amended in 2004 by Acts 2004, No. 762, § 1. This amendment took effect on August 15, 2004, *after* the Defendant committed the present offense but *before* he pled guilty. Even though the penalty provision in effect when an offense is committed is usually the applicable sentencing provision, the supreme court fashioned an exception to this rule when dealing with the 2001 amendment to the DWI sentencing scheme. The supreme court found the 2001 amendment should apply to all defendants *convicted* after the amendment's effective date, even though they committed the offenses before the effective date. The pertinent question for the instant case is whether that same exception should apply to the 2004 amendment. In other words, should the 2004 amendment apply to all defendants who are *convicted (pled guilty)* after the amendment's effective date? For this Defendant, specifically, the question is whether the trial court should have applied the penalty

2

provision in effect when the offense was committed (2001 amendment) or the penalty provision in effect when the Defendant pled guilty (2004 amendment).[1]

Although the trial court failed to comply with all the mandatory requirements of the DWI penalty provision as amended in 2004, it appears it was attempting to comply with that provision rather than the penalty provision in effect when the Defendant committed the offense.

In *State v. Mayeux*, 01-3195 (La. 6/21/02), 820 So.2d 526, the supreme court addressed whether the 2001 amendment to La.R.S. 14:98 should be applied to defendants who committed DWIs prior to the effective date of the 2001 amendment. The supreme court acknowledged that the prevailing jurisprudence adhered to the rule that the appropriate penalty provision is the penalty provision in effect at the time an offense is committed. The supreme court found, however, that the 2001 amendment to La.R.S. 14:98 should not adhere to the prevailing jurisprudence. Rather, the supreme court found that the 2001 amendment should apply to any defendant *convicted* after the amendment's effective date. The court reasoned as follows:

> As an initial matter, statutory interpretation begins, "as [it] must, with the language of the statute." *Bailey v. United States*, 516 U.S. 137, 144, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). While the amended version of the statute does not specifically mention the "retroactivity" of the new provisions, the statute contains three provisions which suggest that the amended version should apply in the instant case.
>
> First, the statute plainly states that "**upon conviction**," and not "upon committing the offense," the defendant shall be sentenced to a specific term. Thus, the specific language in LSA-R.S. 14:98 provides the time at which the penalty provisions are applicable.
>
> Second, as previously noted, the amended version of the statute contains a specific statement of legislative purpose, as follows:

---

[1]LRS-R.S. 14:98 was also amended in 2003. This amendment took effect after the Defendant committed the present offense but before he pled guilty. The court will not discuss whether that amendment should apply to the present Defendant, however, since the penalty provisions at issue were not amended.

The legislature hereby finds and declares that conviction of a third or subsequent DWI offense is presumptive evidence of the existence of a substance abuse disorder in the offender posing a serious threat to the health and safety of the public. Further the legislature finds that there are successful treatment methods available for treatment of addictive disorders.

LRS-R.S. 14:98(G). Thus, the legislature has clearly stated its intention to embrace treatment measures in preference to incarceration. Applying the more lenient sentencing requirements of the amended statute to someone convicted after the enactment of the legislation, despite the commission of the offense prior to the enactment, would further this legislatively stated purpose. This clearly stated legislative purpose is one which this court cannot ignore.

Finally, language in the amending legislation grants potential relief to those already convicted by providing that "[n]othing contained in this Act shall be construed to limit the authority of the Department of Public Safety and Corrections in recommending those persons incarcerated on or before August 15, 2001, to participate in home incarceration in accordance with Code of Criminal Procedure Article 894.2." 2001 La. Acts No. 1163, § 4. It would be incongruous to extend the opportunity for home incarceration, and treatment, to those already convicted but to withhold that opportunity from those who were charged but not convicted prior to August 15, 2001, the effective date of the amendments.

Thus, three specific provisions within the new legislation point to an interpretation consistent with applying the new provisions to a defendant who was not convicted of a fourth DWI charge until after the effective date of the statute: 1) the words "upon conviction"; 2) the legislative purpose of favoring treatment over incarceration; and 3) allowing home incarceration for those previously convicted.

We acknowledge Louisiana's prior case law on the subject has adhered to the rule that "the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer." *State v. Wright*, 384 So.2d 399, 401 (La.1980); *see also*, *State v. Clark*, 391 So.2d 1174 (La.1980); *accord*, *State v. Paciera*, 290 So.2d 681 (La.1974) (Imposition of a sentence under a statute in effect at the time an offense was committed rather than lesser sentence provided for by an amended statute which was enacted after commission of the charged offense and prior to conviction did not deny defendant due process or equal protection when the amendatory statute provided that it was not to apply to crimes committed prior to the effective date of the amendment.). Although this rule of law has been consistently applied in the courts of this state, the rule requiring the penalty provision in effect at the time of the offense be the governing provision where an ameliorative change in the law has occurred is not

4

followed in all jurisdictions. *See Clark*, 391 So.2d at 1176 n. 1; *see also*, *State v. Morris*, 131 Idaho 263, 954 P.2d 681 (1998) (Defendant convicted of first degree burglary was subject to maximum ten-year sentence under amended burglary statute enacted after he committed offense but before he was sentenced, rather than to maximum 15 year sentence under statute in effect when he committed offense, where amended statute did not include savings clause and did not indicate which maximum sentence should apply.). Today, this rule is followed by a majority of the states that have dealt with the issue. *See State v. Von Geldern*, 64 Haw. 210, 638 P.2d 319 (1981); *Elkins v. State*, 659 N.E.2d 563 (Ind.App.1995); *People v. Schultz*, 435 Mich. 517, 460 N.W.2d 505 (1990); *State v. Coolidge*, 282 N.W.2d 511 (Minn.1979); *State v. Pardon*, 272 N.C. 72, 157 S.E.2d 698 (1967); *State v. Cummings*, 386 N.W.2d 468 (N.D.1986); *State v. Macarelli*, 118 R.I. 693, 375 A.2d 944 (1977).

Thus, while current Louisiana appellate court jurisprudence holds that the law in effect at the time of the offense should control the sentencing of the instant defendant, this court has not concluded definitely that, in a case such as the one before it here concerning the specific statutory provisions of the amended LRS-R.S. 14:98, the date of the offense and not the date of the conviction controls. Specifically, this case differs from both *Wright*, 384 So.2d 399, and *Clark*, 391 So.2d 1174, in that those cases dealt only with changes in the term of imprisonment. In both of those cases, the earlier statute, LRS-R.S. 14:67.1, had provided for a penalty of imprisonment at hard labor of "not less than one nor more than ten years," for the crime of theft of livestock. As amended, the penalty provided for imprisonment for "not more than one year." Nothing in the language of the statute changed except the term of imprisonment.

Conversely, here, as discussed at length above, the legislature made substantial changes to the penalty provisions of the statute as well as adding a "policy" statement to the statute. *See* LRS-R.S.14:98(G). While the amended version of the statute does not specifically address the "retroactivity" of the new provisions, the statute does state that "upon conviction" and not "upon committing the offense" the defendant shall be punished to a specific term. Finally, imposing the harsher penalty in such circumstances would serve no valid penological purpose, particularly in the instant case in which the legislature has made a policy determination that a third or fourth DWI offense is presumptive evidence of the existence of a substance abuse disorder and that successful treatment methods other than imprisonment are available and effective for such disorders.

Drunk drivers have extracted a significant toll on society and on the innocent victims of their misdeeds. However, it is the legislature, not this court, which establishes the sentencing range. It is the role of the courts to follow the sentencing provisions which were clearly stated by the legislature.

*State v. Mayeux*, 01-3195, pp. 4-8 (La. 6/21/02), 820 So.2d 526, 529-31 (footnotes omitted)(alterations and emphasis in original).

In examining whether *Mayeux's* holding should apply in the present case, we note that the 2004 amendment also contains the "upon conviction" language emphasized by the supreme court in *Mayeux*. It also appears from the 2004 amendment that the legislature was attempting to "fine tune" the treatment plans for DWI offenders as well as clearly state that a defendant is under supervised probation while subject to home incarceration. Although the pre-2004 law stated that an offender sentenced to home incarceration was subject to any conditions of probation, the law did not clearly state that an offender was placed on supervised probation immediately upon his release from serving the mandatory thirty days imprisonment. The 2004 amendment makes this clear. The 2004 amendment also allows the trial court more discretion as to the length of home incarceration. Thus, it appears that the 2004 amendment was simply a continuation of the efforts begun by the legislature in 2001.

The court finds the same considerations applicable in *Mayeux* are not applicable to the present case. While the 2001 amendment discussed in *Mayeux* produced drastic changes to the DWI sentencing scheme, the 2004 amendment merely "fine tuned" those provisions. Both the 2001 amendment and the 2004 amendment favor treatment plans over imprisonment. Thus, one major concern of the court in *Mayeux*, (i.e.), failing to adhere to the legislature's obvious preference of treatment over imprisonment (-) is arguably not present in the instant case. Under either sentencing provision, the Defendant receives the benefit of the legislature's intent to improve treatment over imprisonment. For this reason, the court finds that an exception to the prevailing jurisprudential rule is not warranted in the present case, and the penalty

6

provision in effect at the time of the offense is the applicable sentencing provision. *See State v. Parker*, 03-924 (La. 4/14/04), 871 So.2d 317.

Assessing the sentence under the provision in effect when the offense was *committed*, this court finds the trial court failed to impose several mandatory sentencing requirements.

The trial court imposed the following sentence:

- Two years at hard labor and a $2,000.00 fine

- Thirty days without benefit of probation, parole or suspension of sentence

- Remainder of sentence suspended and the Defendant placed on supervised probation for two years

- Probation shall commence the day after Defendant released from custody

- Defendant shall undergo evaluation with Department of Health and Hospitals for substance abuse

- Six months home incarceration, subject to electronic monitoring and a reasonable curfew

- Electronic interlock device on any vehicle

- After home incarceration, general conditions of article 895 are imposed, plus a $55.00 per month supervision.

- Fine and costs payable as condition of probation

Below is the sentencing provisions of La.R.S. 14:98 in effect when the present offense was committed. The emphasized portions reflect the mandatory requirements erroneously omitted by the trial court.

> D.(1)(a) On a conviction of a third offense, notwithstanding any other provision of law to the contrary and regardless of whether the offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years and shall be fined two thousand dollars. Thirty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The remainder of the sentence of imprisonment shall be suspended and the offender shall be

7

required to undergo an evaluation to determine the nature and extent of the offender's substance abuse disorder.

(b) The treatment professional performing the evaluation shall recommend appropriate treatment modalities which shall include substance abuse treatment at an inpatient facility recommended by the Department of Health and Hospitals, office for addictive disorders and approved by the Department of Public Safety and Corrections for a period of not less than four weeks nor more than six weeks.

(c) The offender may be sentenced to additional outpatient substance abuse treatment services to meet the offender's needs if determined to be necessary by the offender's treating physician, for a period not to exceed twelve months. The follow-up treatment shall be provided in a manner to gradually decrease the intensity of treatment services.

(d) Upon successful completion of the inpatient substance abuse treatment required by the Paragraph, the offender shall be sentenced to *home incarceration for not less than the period of time remaining on the offender's suspended sentence as provided in Paragraph (3) of this Subsection.*

(e) If the offender fails to complete the substance abuse treatment required by the provisions of this Paragraph or violates any condition of home incarceration, he shall be imprisoned for the original term of his suspended sentence with no credit for time served under home incarceration.

(2)(a) In addition, the court shall order that the vehicle being driven by the offender at the time of the offense shall be seized and impounded, and sold at auction in the same manner and under the same conditions as executions of writ of seizures and sale as provided in Book V, Title II, Chapter 4 of the Code of Civil Procedure.

(b) The vehicle shall be exempt from sale if it was stolen, or if the driver of the vehicle at the time of the violation was not the owner and the owner did not know that the driver was operating the vehicle while intoxicated.

. . . .

(3)(a) An offender sentenced to home incarceration shall be supervised and shall be subject to any of the conditions of probation. The court shall specify the conditions of home incarceration which shall include but shall not be limited to the following:

(i) Electronic monitoring.

(ii) Curfew restrictions.

(iii) *Home visitation at least once per month by the Department of Public Safety and Corrections.*

(b) The court shall also require the offender to *obtain employment and to participate in a court-approved driver improvement program at his expense.* The activities of the offender outside of his home shall be limited to traveling to and from work, church services, Alcoholics Anonymous meetings, or a court-approved driver improvement program.

As emphasized, the trial court failed to impose several mandatory sentencing requirements. First, the Defendant was sentenced to only six months of home incarceration while the penalty provision calls for home incarceration for not less than the period of time remaining on the offender's suspended sentence. Thus, the Defendant should have been placed on home incarceration for at least one year and eleven months. The trial court also failed to impose home visitation at least once a month as a condition of home incarceration. Additionally, the trial court failed to order the Defendant to obtain employment and participate in a court- approved driver improvement program. Finally, the trial court failed to establish a payment plan for the fine and costs ordered as conditions of the Defendant's probation. The trial court did not order impoundment of the vehicle because the parties agreed that the car was not subject to forfeiture.

This court must vacate the sentence imposed and remand for resentencing. It is recognized by the court that neither party has raised the errors discussed above. The Defendant pled guilty with an agreed-upon sentence. On appeal, the Defendant's sole assignment of error challenges the trial court's denial of his motion to suppress. He makes no allegations regarding the illegality or excessiveness of the sentence imposed. Although these factors do not change the illegality of the sentence imposed, the court will not exercise its discretionary authority under La.Code Crim.P. art. 882. However, in view of the illegality of the sentence, the court vacates and remands the matter back to the trial court for resentencing of the Defendant.

9

## ASSIGNMENT OF ERROR

As his single assignment of error, the Defendant asserts that the trial court erred in denying his motion to suppress. The Defendant asserts that the motion to suppress should have been granted due to fatal flaws in the procedures followed by the Louisiana State Police while conducting the seat belt checkpoint. The procedures for establishing and conducting seat belt checkpoints are provided by La.R.S. 32:295.4:

> All law enforcement agencies involved in traffic enforcement shall establish guidelines for the operation of seat belt checkpoints and proof of compulsory motor vehicle liability security checkpoints. Such guidelines shall include but not be limited to the following provisions:
>
> (1) The location, time, and duration for seat belt and compulsory motor vehicle liability security checkpoints shall be established in written form by supervisory or other administrative personnel of the law enforcement agency rather than the field officers implementing the checkpoint.
>
> (2) Provision for advance warning to the approaching motorists with signs, flares, and other indications to warn motorists of an impending stop and to provide indication of its official nature as a police checkpoint.
>
> (3) Provisions to ensure detention of motorists for a minimal length of time.
>
> (4) The use of a systematic, nonrandom criteria for stopping motorists.

First, the Defendant asserts that the Louisiana State Police failed to use a "systematic, nonrandom criteria for stopping motorists." The Defendant argues, in his brief to this court, that the troopers' failure to use a "systematic, nonrandom criteria" in deciding which motorists to stop at the checkpoint was unlawful, and rendered the evidence of his intoxication subject to suppression.

At the hearing on the motion to suppress, Louisiana State Police Trooper Michael Hataway was the only witness to testify. Trooper Hataway worked at the seat belt checkpoint on the date in question and observed the Defendant without his seat

10

belt. We note that the Defendant does not dispute the allegation that he was not wearing his seat belt when he entered the checkpoint. Trooper Hataway also described the means by which he decided which motorists to stop:

Q    And describe for me how you would determine which vehicles to stop and which vehicles not to stop at this particular checkpoint.

A    The persons that were not wearing their seat belt were stopped. Those that were wearing their seat belt were not stopped.

Trooper Hataway further testified:

Q    Okay. Now, this was a, this was a seat belt checkpoint and you weren't looking for anything else?

A    I think if a person came through with a . . . no vehicle license or expired, really expired, inspection sticker that that would be taken care of as well.

. . . .

Q    And, so if you saw a passenger not wearing a seat belt you would have stopped the vehicle as well; correct?

A    Probably not.

Q    Probably not?

A    Probably not.

. . . .

A    My . . . do we just . . . I, I . . . let me answer it this way, our primary responsibility is to check seat belts. I looked for drivers not wearing seat belts. If I saw a driver not wearing a seat belt or if I saw a vehicle come through with a really expired inspection sticker or if it passed by, I didn't see any license plates on it, I'd ask the next trooper, "Check those plates", or the same token, if he was up there with traffic going south he may say, "Check that . . .

Q    My question . . .

A    . . . that plate."

Q    Let me, let me go back to my question. If you didn't see an observable offense, in other words some type of observable while the car was in motion?

11

A      There were . . .

Q      I'm not talking about stopping the car and checking papers or stopping and checking drivers for DWI or anything like that. If you didn't notice an observable offense did you stop any vehicles and make them pull to the side of the road?

A      No.

Q      If . . . did you see any other officers stopping any other cars for . . . with any other criteria, in other words under those same guidelines? Did, did you see any other . . .

A      No.

Q      . . . officer just randomly . . .

A      No.

Q      . . . stopping cars to check paperwork or anything like that?

A      No.

Q      Okay. So there had to be an observable offense first; isn't . . .

A      Correct.

Following the hearing, the trial court issued a written ruling on the Defendant's motion to suppress. The trial court denied the motion, stating that "th[e] stop in question, as it was administered by the Louisiana State Police, the Louisiana Department of Safety, and Trooper Michael Hataway, was legal under the *Tucker* analysis as well as the other constitutional rights of the defendant."

In *State v. Tucker*, 626 So.2d 707 (La.1993), *affirmed on rehearing*, 626 So.2d720 (La.1993), the defendant was observed by police officers standing in front of a business establishment in a neighborhood that was the target of a drug sweep. When the defendant saw the police officers, he began to run from the scene. The police officers then ordered the defendant to "halt," but before doing so, the defendant discarded a small bag containing marijuana. *Id*. at 709. He then complied with the officers' order; they retrieved the marijuana and arrested him for possession with intent

12

to distribute. In his motion to suppress, the *Tucker* defendant asserted that he was unconstitutionally seized without a reasonable, articulable suspicion that he was engaged in criminal activity, and that, therefore, the evidence was the fruit of an illegal seizure. We find that because the Defendant in the instant case was stopped only after his violation of the seat belt statute was observed, *Tucker* offers no guidance. Indeed, the *Tucker* court distinguished its analysis from those involving automobile roadblocks.

We also note that the seat belt security checkpoint statute, La.R.S. 32:295.4, was first added in 2003. After careful research, we find that no cases have yet been reported under that statute. However, because the language of that statute is directly drawn from guidelines first set forth in *State v. Jackson*, 00-15 (La. 7/6/00), 764 So.2d 64, an analysis of that case is relevant.

In *Jackson*, the supreme court analyzed the constitutionality of automobile checkpoints that were used to enforce compliance with proof of insurance statutes. The court provided the language that was later made the substance of La.R.S. 32:295.4, and emphasized that "the guiding principle must be that the procedures utilized curtail the discretion of the officer in the field." *Id*. at 73. The Defendant asserts that the conduct of the officers, as indicated by Trooper Hataway's testimony, was discretionary, and therefore, fell short of meeting the principle enunciated in *Jackson*.

However, we note that one important fact distinguishes Jackson from the instant case. In *Jackson*, the police established a roadblock in order to check motorists for proof of insurance. In order to conduct their inspections, the police officers required every motorist traveling a certain road to stop and produce the necessary documents. The defendant was a driver who had abandoned his car by the side of the road in

13

order to avoid the checkpoint. After leaving his car, the defendant was approached by a police officer working at the checkpoint, who asked him for his driver's license. During their encounter, the police officer discovered that the license had been suspended, and after issuing citations for numerous traffic violations, he arrested the defendant. While conducting a pat-down search pursuant to that arrest, the officer discovered a small bag containing marijuana.

In *Jackson*, the trial court granted the defendant's motion to suppress, which was affirmed by the appellate court. On the state's application for writs, the supreme court found that the record was unclear as to whether the regulations used in the selection and implementation, the duration of the detention of the motorists, and the signage used to warn motorists, were sufficiently followed to make the checkpoint constitutional.

In the instant case, we note that the procedures utilized by the Louisiana State Police differed significantly from those occurring in *Jackson*. In *Jackson*, the police stopped every car, and spoke with every driver, in order to determine whether a violation of driving without proof of insurance was occurring. However, here, the police did not stop any cars, or speak to any drivers, but merely caused them to slow their speed to a level at which noncompliance with the seat belt statutes could be visually observed by the checkpoint officers. So, while every motorist in *Jackson* had to interact on a personal level with the police, the motorists in the instant case did not have to do so, unless they were observed to be in violation of the statute the checkpoint was designed to enforce.

Despite that difference, La.R.S. 32:295.4 requires adherence, in the instant case, to the *Jackson* guidelines. However, we find the Defendant has failed to show that the criteria used by the officers at the checkpoint in the instant case was not systematic

14

and nonrandom. Trooper Hataway indicated in his testimony that if no violations were observed, drivers were allowed to pass through the checkpoint without stopping. Hataway further described the observable violations for which he would have stopped a motorist. Those violations were the driver's failure to wear a seat belt, an inspection sticker that was significantly out of date, or absent, or expired license plate. Thus, the officers did not use discretion to determine which cars without violations they would stop, but rather, they used discretion to select which cars with observable violations they would stop. In the cases cited by the Defendant in which unacceptable levels of discretion invalidated stops, the discretion was used to select and stop cars without observable violations. We find that this use of discretion is patently different from the discretion used in determining which of a number of observed violators to stop.

In *State v. Parms*, 523 So.2d 1293 (La.1988), an unacceptable level of discretion invalidated the stop of the defendant's car. In *Parms*, the defendant was stopped at a sobriety checkpoint, at which some cars were allowed to proceed when the officers on duty were busy. The court found that the officers had complete discretion as to which cars to stop and which cars to allow to pass; the defendant was among the cars stopped without observable violations of traffic laws. In the instant case, the Defendant was not chosen to stop regardless of observed violations, but rather, he was stopped because he was observed to be driving without a seat belt. Therefore, the Defendant's argument that *Parms* invalidates his stop fails.

In another case involving a DWI checkpoint, a defendant's seizure was ruled in violation of the Louisiana Constitution when it occurred at a DWI checkpoint at which every car was stopped and every driver required to produce a driver's license while the police checked for signs of intoxication. *State v. Church*, 538 So.2d 993 (La.1989). The defendant in *Church* did not have his driver's license at the time he

15

was stopped; while he waited by his car to be ticketed for that offense, the officers observed signs of intoxication. *Id.* at 994. Following a field sobriety test, the defendant was charged with driving while intoxicated. *Id.* However, the court ruled that in light of the ineffectiveness of such checkpoints on the problems of intoxicated motorists, such checkpoints were an unconstitutional intrusion on individual privacy. Again, such a checkpoint, at which drivers are stopped without any observable violations, or reasonable suspicion that such violations were occurring, is easily distinguishable from the checkpoint at issue. The checkpoint at issue did not require any car to stop, unless a violation was observed. Those drivers who were not observed to be in violation of traffic laws were allowed to continue without any direct interaction with the police. We find that the checkpoint at issue did not constitute an intrusion on the individual privacy of those drivers. We conclude, therefore, that the Defendant's reliance on this case to assert that the checkpoint was unconstitutional is misplaced.

The Defendant also asserts that the checkpoint violated the other provisions of La.R.S. 32:295.4. The first provision requires the location, time, and durations for the checkpoints to be established in written form by supervisory or administrative personnel, rather than by the officers on the scene. The Defendant states that no evidence was presented showing compliance with this provision. The officer who testified worked at the checkpoint, and his testimony indicated that he was not involved in the establishment of the checkpoint. No evidence was presented to show how the checkpoint was established. The Defendant has produced no evidence that the establishment of the checkpoint was in violation of this provision. Accordingly, this argument is without merit.

16

The Defendant then argues that the checkpoint violated the second provision of La.R.S. 32:295.4, which requires "signs, flares, and other indications to warn motorists of an impending stop and to provide indication of its official nature as a police checkpoint." The witness testified that he was unaware of the nature of the indications used to comply with this provision. However, as in the previous argument, the Defendant has not shown any evidence that this provision was violated. Accordingly, this argument is also without merit.

Finally, the Defendant argues that the State did not adequately show that the checkpoint complied with the third provision of La.R.S. 32:295.4, requiring a detention of motorists for a minimal length of time. However, the motorists who were not observed to be in violation of any statute were not detained, but were merely slowed. The only motorists who were detained were those who, like the Defendant, were observed to be in violation of a traffic statute. Accordingly, this argument, like the others, is without merit.

## CONCLUSION

The Defendant has failed to show that the trial court erroneously denied his motion to suppress. He failed to show that the evidence of his intoxication was obtained as a result of a checkpoint that was improperly established or administered. Accordingly, his conviction is affirmed. The Defendant's sentence, however, is vacated as illegal, and the case is remanded for resentencing. The trial court is instructed to resentence the Defendant to a legal sentence under the sentencing provision in effect when the offense was committed.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**