# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-569

STATE OF LOUISIANA

VERSUS

JAMES OLIVER MCKEEHAN, JR.

**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 115137-40
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

**********

## OSWALD A. DECUIR
## JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

**Painter, J., dissents in part with written reasons.**

CONVICTION AND SENTENCE
AFFIRMED WITH INSTRUCTIONS.

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
     **James Oliver McKeehan, Jr.**

**W. Thomas Barrett III**
**Assistant District Attorney**
**Thirty-eighth Judicial District**
**P.O. Box 280**
**Cameron, LA 70631**
**Counsel for Plaintiff/Appellee:**
     **State of Louisiana**

**James Oliver McKeehan, Jr.**
**In proper person**
**C. Paul Phelps Correction Center**
**P. O. Box 1056**
**Dequincy, LA 70633**

**DECUIR, Judge.**

The Defendant, James Oliver McKeehan, Jr., was convicted of driving while intoxicated (DWI), fourth offense, in violation of La.R.S. 14:98. He lodges this appeal asserting the following three assignments of error:

> 1) The State's reliance on the presumption of intoxication set forth in La.R.S. 32:662 was improper, as the bill of information did not charge the Defendant with a violation of La.R.S. 14:98(A)(1)(b), but instead charged a violation of La.R.S. 14:98(A)(1)(a).

> 2) The evidence introduced at trial was insufficient to find that the Defendant was under the influence of an alcoholic beverage at the time he was driving.

> 3) The trial court imposed a sentence upon the Defendant that results in the *ex post facto* application of the law which is prohibited by both the federal and state constitutions. The trial court improperly applied the harsher sentencing provisions in effect at the time of his conviction instead of the sentencing provisions in effect at the time of the commission of the offense.

## ERRORS PATENT

Our review of the record reveals one error patent. The trial court failed to inform the Defendant of the appropriate prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Accordingly, we direct the trial court to inform the Defendant by written notice within ten days of the rendition of this opinion.

## SUFFICIENCY OF EVIDENCE

We will first examine Defendant's allegation that the evidence is not sufficient to support his conviction. *See State v. Hearold*, 603 So.2d 731 (La.1992). The Defendant contends the evidence introduced at trial was insufficient to find that he was under the influence of an alcoholic beverage at the time he was driving.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d

676, 678 (La.1984). Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438; *see State v. Neal*, 2000-0674 p. 9 (La.6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The statutory requirement of La. R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Neal*, 2000-0674 p. 9, 796 So.2d at 657.

*State v. Draughn*, 05-1825, p. 7 (La. 1/17/07), 950 So.2d 583, 592.

Thus, to support the Defendant's conviction, the State was required to prove the Defendant was operating a motor vehicle and was either under the influence of alcohol or his blood alcohol concentration was 0.08 or more.

The Defendant testified that on November 22, 2003, he went to a hunting camp to repair two air conditioners and an ice machine. While working, he had two cups of beer from a keg, which possibly totaled fifteen ounces of beer. The Defendant testified that he was at the camp for approximately two hours. When the Defendant was ready to leave, the owner of the camp handed him a drink in a Big Gulp cup that was either twenty or thirty-two ounces. When he got in the car, he placed the cup in his lap. On his way back to Lake Charles, the Defendant passed Deputy Donald LeDoux while driving seventy miles per hour. The Defendant testified that he then drank the contents of the cup and then threw the cup out the window.

Deputy LeDoux testified that when he stopped the Defendant he appeared unbalanced as he exited his vehicle and that his speech was slurred. Deputy LeDoux then noticed marijuana in the Defendant's vehicle and the Defendant was immediately placed under arrest. Deputy LeDoux then contacted the Defendant's parents, who came to the scene to retrieve the Defendant's vehicle. After the Defendant's parents left the scene, Detective LeDoux searched the surrounding area in an attempt to locate the cup discarded by the Defendant prior to being stopped. Unable to locate the cup,

2

Detective LeDoux left the scene and drove the Defendant to the police department in Cameron.

When the Defendant arrived at the police department he asked to go to the restroom, but was told to wait. The Defendant then urinated on himself. Subsequently, a field sobriety test was performed at the police department. Deputy LeDoux testified that during the field sobriety test the Defendant was "unable to respond to almost anything to the point of uncontrolled bowel movements where he had to be taken to the restroom to complete. And he was just -- seemed to be out of control, incoherent in every manner." Deputy LeDoux was asked if the Defendant cooperated and completed the horizontal gaze nystagmus test. He testified the Defendant tried, but it was hard for him. He stated "I believe we can say he completed it." Deputy LeDoux then testified the Defendant had a positive result in all the different categories. The Defendant subsequently submitted to the intoxilyzer test. The results indicated the Defendant's blood alcohol concentration was .227 percent.

The trial court found the Defendant guilty of DWI, fourth offense, stating the following:

> I'll agree with you about one thing, Mr. McHale. I don't think that his level of intoxication at the time of his stop was as severe as it was when he was videotaped or else Deputy LeDoux would not have observed that the vehicle was going straight.
>
> But nevertheless, the evidence is such that he was imbibing alcoholic beverages before the stop and there is some evidence of impairment. And that's adequate.

The Defendant contends the State failed to prove he was operating the vehicle while intoxicated. In *State v. Picard*, 03-2422, pp. 8-9 (La.App. 1 Cir. 9/17/04), 897 So.2d 49, 54-55 the court said:

3

Intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify. What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. *State v. Anderson*, 2000-1737, p. 10 (La.App. 1st Cir.3/28/01), 784 So.2d 666, 676, *writ denied*, 2001-1558 (La.4/19/02), 813 So.2d 421. Furthermore, an officer's subjective opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction. *See State v. Smith*, 93-1490, p. 6 (La.App. 1st Cir.6/24/94), 638 So.2d 1212, 1215.

In *Smith*, 93-1490 at pp. 3-4, 638 So.2d at 1214, this court found the evidence sufficient to support a DWI conviction where the trooper testified that the defendant smelled of alcohol, his speech was slurred and deliberate, his eyes were bloodshot, he was staggering, he admitted that he had consumed four beers, he was uncooperative and aggressive after being arrested, and he refused to take the breath test. Similarly, a DWI conviction was found to be supported by the evidence when a trooper observed the defendant's erratic driving, physical appearance, slurred speech, and behavior. The defendant failed the field sobriety tests. He attempted to hide a vodka bottle under the back seat of his truck, and he admitted he had drunk alcohol. *State v. Worachek*, 98-2556, p. 9 (La.App. 1st Cir.11/5/99), 743 So.2d 1269, 1274. Also, in *State v. Minnifield*, 31,527, pp. 3-4 (La.App. 2nd Cir.1/20/99), 727 So.2d 1207, 1211, *writ denied*, 99-0516 (La. 6/18/99), 745 So.2d 19, the evidence was sufficient where the officer observed the defendant weave out of the traffic lane three times; he staggered, slurred, smelled of alcohol, and gave a false name; and a second officer indicated that the defendant failed the horizontal gaze nystagmus test.

We find that the evidence presented was sufficient to prove beyond a reasonable doubt that the Defendant was under the influence of alcohol when operating his vehicle. Accordingly, the Defendant's conviction is affirmed.

**BILL OF INFORMATION**

The Defendant contends that the State's reliance on the presumption of intoxication in La.R.S. 32:622 at trial was improper because the Bill of Information referenced La.R.S. 14:98(A)(1)(a) rather than La.R.S. 14:98(A)(1)(b).

4

The bill charges the Defendant with "Driving While Intoxicated -4[th] La.R.S. 14:98." The purpose of the bill of information is to inform the defendant of the charges against him. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367. The bill of information in this case was sufficient to inform the defendant of the charges lodged against him. This assignment has no merit.

## SENTENCING

The Defendant contends that by sentencing him under La.R.S. 14:98E as it was written at the time of his conviction rather than at the time of his arrest the trial court violated the prohibition against *ex post facto* application of the law provided in both the state and federal constitutions. The statute, as it was written at the time of the arrest, provided for the mandatory suspension of all but sixty days of a defendant's sentence for fourth offense DWI. In 2005, the legislature amended the statute to make the suspension of sentence discretionary on the part of the trial court. 2005 La. Acts No. 497, § 1.

This court has previously addressed the retroactive application issue with regard to the 2004 amendment to La.R.S. 14:98 as follows:

> In *State v. Mayeux*, 01-3195 (La. 6/21/02), 820 So.2d 526, the supreme court addressed whether the 2001 amendment to La.R.S. 14:98 should be applied to defendants who committed DWIs prior to the effective date of the 2001 amendment. The supreme court acknowledged that the prevailing jurisprudence adhered to the rule that the appropriate penalty provision is the penalty provision in effect at the time an offense is committed. The supreme court found, however, that the 2001 amendment to La.R.S. 14:98 should not adhere to the prevailing jurisprudence. Rather, the supreme court found that the 2001 amendment should apply to any defendant convicted after the amendment's effective date.

*State v. Pulliam*, 2005-534, p.3 (La.App. 3 Cir. 12/30/05), 920 So.2d 900, 902.

In *Pulliam,* this court noted that the basis for the exception created in *Mayeaux* was the substantial nature of the legislative change and the policy change of direction

5

from a focus on incarceration to a focus on treatment in DWI cases. Finding that the 2004 amendment was a mere fine tuning rather than the drastic change contemplated by the court in *Mayeaux*, this court declined to apply the 2004 amendment to the statute retroactively.

We find the 2005 amendment is more like the 2001 amendment in *Mayeux.* In removing the mandatory suspension of sentence for fourth offense, the legislature has indicated that the focus on treatment rather than incarceration requires a case by case analysis. This is a substantial legislative change in that it shifts discretion from the legislature back to the courts.

In *State ex rel. Olivieri v. State,* 00-0172 (La. 2/21/01), 799 So.2d 735, the Louisiana Supreme Court held that if a law changes the definition of criminal conduct or increases the penalty for a particular crime applying it retroactively violates the state and federal constitutional prohibitions against *ex post facto* laws. In the present case, the question is whether the removal of the mandatory suspension of sentence constitutes an increase in penalty. We think not.

We find the 2005 amendment merely alters the conditions upon which the defendant's sentence may be suspended. In cases discussing changes to statutes governing the requirements for a defendant's release for parole or good time diminution, the courts have concluded that the law in effect at the time of a prisoner's release governs the terms of that release, rather than the law in effect at the time of the commission of the offense. *Id.* The changes to the eligibility requirements do not subject defendant to a greater penalty than that authorized for his crime at the time of its commission and, therefore, do not violate constitutional prohibitions against *ex post facto* laws. *See State v. Hutchinson,* 99-0034 (La.App. 4 Cir. 5/17/00).

6

We are mindful that the cases cited above involved changes to eligibility requirements in statutes other than the statute defining the crime and sentence. However, we find no compelling reason that the changes to the eligibility for suspension of sentence in this case should be treated differently simply because they are contained within La.R.S. 14:98(E). Accordingly, the trial court did not err in applying the sentencing provisions of La.R.S. 14:98E in effect at the time of the Defendant's conviction.

This assignment has no merit.

## DECREE

For the foregoing reason, the Defendant's conviction and sentence are affirmed. The trial court is instructed to inform the Defendant of the proper prescriptive period for post- conviction relief.

**CONVICTION AND SENTENCE AFFIRMED WITH INSTRUCTIONS.**

STATE OF LOUISIANA

VERSUS

JAMES OLIVER MCKEEHAN, JR.

**PAINTER, Judge, Dissenting in Part.**

I agree with the majority's decision to affirm the Defendants' conviction. However, I respectfully dissent from the opinion of the majority insofar as it affirms the Defendant's sentencing on the charge of fourth-offense DWI under the penalty provisions in effect at the time of his conviction.

The offense at issue was committed on November 22, 2003. The Defendant was convicted on May 15, 2006, and sentenced on December 14, 2006. At the time of the commission of the offense, La.R.S. 14:98 provided, in pertinent part, as follows:

> E. (1)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Sixty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. *The remainder of the sentence of imprisonment shall be suspended* and the offender shall be required to undergo an evaluation to determine the nature and extent of the offender's substance abuse disorder.

(Emphasis added).

On the date of conviction, the penalty provision read as follows:

> E. (1)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Sixty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. ***The court, in its discretion, may suspend all or any part of the remainder of the sentence of imprisonment***. If any portion of the sentence is suspended, the offender shall be placed on supervised probation with the Department of Public Safety and Corrections, division of probation and parole, for a period of time not to exceed five years, which probation shall commence on the day after the offender's release from custody.

(Emphasis added).

The penalty provision in effect in May 2006 differs from that in effect in November 2003 in that, in 2003, the trial court was required to suspend the period of incarceration imposed after the first sixty days. In 2006, the trial court was given the discretion to suspend the remainder of the sentence.

This court addressed a similar issue in *State v. Pulliam*, 05-534 (La.App. 3 Cir. 12/30/05), 920 So.2d 900, *writ denied*, 06-667 (La. 10/6/06), 938 So.2d 65. The defendant in *Pulliam* committed a DWI offense on May 3, 2003, and pled guilty on February 3, 2005. In an error patent discussion, this court was called on to determine whether the defendant should be sentenced under the penalty provision in effect at the time of the commission of the offense or at the time he pled guilty. This court addressed the supreme court's decision in *State v. Mayeux*, 01-3195 (La. 6/21/02), 820 So.2d 526, and the 2004 amendments to La.R.S. 14:98 as follows:

> In *State v. Mayeux*, 01-3195 (La.6/21/02), 820 So.2d 526, the supreme court addressed whether the 2001 amendment to La.R.S. 14:98 should be applied to defendants who committed DWIs prior to the effective date of the 2001 amendment. The supreme court

2

acknowledged that the prevailing jurisprudence adhered to the rule that the appropriate penalty provision is the penalty provision in effect at the time an offense is committed. The supreme court found, however, that the 2001 amendment to La.R.S. 14:98 should not adhere to the prevailing jurisprudence. Rather, the supreme court found that the 2001 amendment should apply to any defendant convicted after the amendment's effective date. The court reasoned as follows:

> As an initial matter, statutory interpretation begins, "as [it] must, with the language of the statute." *Bailey v. United States*, 516 U.S. 137, 144, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). While the amended version of the statute does not specifically mention the "retroactivity" of the new provisions, the statute contains three provisions which suggest that the amended version should apply in the instant case.
>
> First, the statute plainly states that "upon conviction," and not "upon committing the offense," the defendant shall be sentenced to a specific term. Thus, the specific language in LSA-R.S. 14:98 provides the time at which the penalty provisions are applicable.
>
> Second, as previously noted, the amended version of the statute contains a specific statement of legislative purpose, as follows:
>
>> The legislature hereby finds and declares that conviction of a third or subsequent DWI offense is presumptive evidence of the existence of a substance abuse disorder in the offender posing a serious threat to the health and safety of the public. Further the legislature finds that there are successful treatment methods available for treatment of addictive disorders.
>
> LRS-R.S. 14:98(G). Thus, the legislature has clearly stated its intention to embrace treatment measures in preference to incarceration. Applying the more lenient sentencing requirements of the amended statute to someone convicted after the enactment of the legislation, despite the commission of the offense prior to the enactment, would further this legislatively stated purpose. This clearly stated legislative purpose is one which this court cannot ignore.
>
> Finally, language in the amending legislation grants potential relief to those already convicted by providing that

3

"[n]othing contained in this Act shall be construed to limit the authority of the Department of Public Safety and Corrections in recommending those persons incarcerated on or before August 15, 2001, to participate in home incarceration in accordance with Code of Criminal Procedure Article 894.2." 2001 La. Acts No. 1163, § 4. It would be incongruous to extend the opportunity for home incarceration, and treatment, to those already convicted but to withhold that opportunity from those who were charged but not convicted prior to August 15, 2001, the effective date of the amendments.

Thus, three specific provisions within the new legislation point to an interpretation consistent with applying the new provisions to a defendant who was not convicted of a fourth DWI charge until after the effective date of the statute: 1) the words "upon conviction"; 2) the legislative purpose of favoring treatment over incarceration; and 3) allowing home incarceration for those previously convicted.

We acknowledge Louisiana's prior case law on the subject has adhered to the rule that "the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer." *State v. Wright*, 384 So.2d 399, 401 (La.1980); *see also*, *State v. Clark*, 391 So.2d 1174 (La.1980); *accord*, *State v. Paciera*, 290 So.2d 681 (La.1974) (Imposition of a sentence under a statute in effect at the time an offense was committed rather than lesser sentence provided for by an amended statute which was enacted after commission of the charged offense and prior to conviction did not deny defendant due process or equal protection when the amendatory statute provided that it was not to apply to crimes committed prior to the effective date of the amendment.). Although this rule of law has been consistently applied in the courts of this state, the rule requiring the penalty provision in effect at the time of the offense be the governing provision where an ameliorative change in the law has occurred is not followed in all jurisdictions. *See Clark*, 391 So.2d at 1176 n. 1; *see also, State v. Morris*, 131 Idaho 263, 954 P.2d 681 (1998) (Defendant convicted of first degree burglary was subject to maximum ten-year sentence under amended burglary statute enacted after he committed offense but before he was sentenced, rather than to maximum 15 year sentence under statute in effect when he committed offense, where amended statute did not include savings clause and did not

4

indicate which maximum sentence should apply.). Today, this rule is followed by a majority of the states that have dealt with the issue. *See State v. Von Geldern*, 64 Haw. 210, 638 P.2d 319 (1981); *Elkins v. State*, 659 N.E.2d 563 (Ind.App.1995); *People v. Schultz*, 435 Mich. 517, 460 N.W.2d 505 (1990); *State v. Coolidge*, 282 N.W.2d 511 (Minn.1979); *State v. Pardon*, 272 N.C. 72, 157 S.E.2d 698 (1967); *State v. Cummings*, 386 N.W.2d 468 (N.D.1986); *State v. Macarelli*, 118 R.I. 693, 375 A.2d 944 (1977).

Thus, while current Louisiana appellate court jurisprudence holds that the law in effect at the time of the offense should control the sentencing of the instant defendant, this court has not concluded definitely that, in a case such as the one before it here concerning the specific statutory provisions of the amended LRS-R.S. 14:98, the date of the offense and not the date of the conviction controls. Specifically, this case differs from both *Wright*, 384 So.2d 399, and *Clark*, 391 So.2d 1174, in that those cases dealt only with changes in the term of imprisonment. In both of those cases, the earlier statute, LRS-R.S. 14:67.1, had provided for a penalty of imprisonment at hard labor of "not less than one nor more than ten years," for the crime of theft of livestock. As amended, the penalty provided for imprisonment for "not more than one year." Nothing in the language of the statute changed except the term of imprisonment.

Conversely, here, as discussed at length above, the legislature made substantial changes to the penalty provisions of the statute as well as adding a "policy" statement to the statute. *See* LRS-R.S.14:98(G). While the amended version of the statute does not specifically address the "retroactivity" of the new provisions, the statute does state that "upon conviction" and not "upon committing the offense" the defendant shall be punished to a specific term. Finally, imposing the harsher penalty in such circumstances would serve no valid penological purpose, particularly in the instant case in which the legislature has made a policy determination that a third or fourth DWI offense is presumptive evidence of the existence of a substance abuse disorder and that successful treatment methods other than imprisonment are available and effective for such disorders.

Drunk drivers have extracted a significant toll on society and on the innocent victims of their misdeeds. However, it is the legislature, not this court, which

establishes the sentencing range. It is the role of the courts to follow the sentencing provisions which were clearly stated by the legislature.

*State v. Mayeux*, 01-3195, pp. 4-8 (La.6/21/02), 820 So.2d 526, 529-31 (footnotes omitted)(alterations and emphasis in original).

In examining whether *Mayeux's* holding should apply in the present case, we note that the 2004 amendment also contains the "upon conviction" language emphasized by the supreme court in *Mayeux*. It also appears from the 2004 amendment that the legislature was attempting to "fine tune" the treatment plans for DWI offenders as well as clearly state that a defendant is under supervised probation while subject to home incarceration. Although the pre-2004 law stated that an offender sentenced to home incarceration was subject to any conditions of probation, the law did not clearly state that an offender was placed on supervised probation immediately upon his release from serving the mandatory thirty days imprisonment. The 2004 amendment makes this clear. The 2004 amendment also allows the trial court more discretion as to the length of home incarceration. Thus, it appears that the 2004 amendment was simply a continuation of the efforts begun by the legislature in 2001.

The court finds the same considerations applicable in *Mayeux* are not applicable to the present case. While the 2001 amendment discussed in *Mayeux* produced drastic changes to the DWI sentencing scheme, the 2004 amendment merely "fine tuned" those provisions. Both the 2001 amendment and the 2004 amendment favor treatment plans over imprisonment. Thus, one major concern of the court in *Mayeux*, (i.e.), failing to adhere to the legislature's obvious preference of treatment over imprisonment (-) is arguably not present in the instant case. Under either sentencing provision, the Defendant receives the benefit of the legislature's intent to improve treatment over imprisonment. For this reason, the court finds that an exception to the prevailing jurisprudential rule is not warranted in the present case, and the penalty provision in effect at the time of the offense is the applicable sentencing provision. *See State v. Parker*, 03-924 (La.4/14/04), 871 So.2d 317.

*Id*. at 902-05.

The 2005 amendments to La.R.S. 14:98 gave the trial court the discretion to suspend all or part of a defendant's sentence, beyond thirty days for a third offender and beyond sixty days for a fourth offender, for a conviction of DWI. Additionally, the amendments provided that, if an offender was unable to pay the costs incurred for

6

participating in a substance abuse treatment program, driver improvement program, or home incarceration, the trial court could require the offender to reimburse the State pursuant to a payment schedule determined by that court.

The 2005 amendments appear to give the trial court more discretion regarding sentencing for third and fourth offenders. I do not agree with the majority that this change is an ameliorative change in La.R.S. 14:98; thus, the amendment at issue differs from the 2001 amendments discussed in *Mayeux*. Accordingly, in my view, the jurisprudential exception set out in *Mayeux* is not warranted in the case *sub judice*. Instead, we would do well to follow our decision in *Pulliam* and find that the Defendant should have been sentenced pursuant to the penalty provisions in effect at the time of the commission of the offense. As the Defendant was sentenced in accordance with the penalty provisions in effect at the time of his conviction, I would vacate the Defendant's sentence and remanded the matter for resentencing.