ADOPTION OF A MINOR
(and a companion case).

Essex.   October 5, 1972. — January 17, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Adoption.   Contract*, For visitation rights, Validity.

On a petition in the Probate Court for the adoption and change of
    name of a minor child, there was no invalidity in consent given by
    the natural mother even though it was conditioned upon her obtain-
    ing visitation rights to the child not contrary to the paramount
    interests of the child.   [844–847]

PETITIONS filed in the Probate Court for the county of
Essex on August 5 and 19, 1968.
    The cases were heard by *Pettoruto, J.*
    *Meyer H. Goldman* for the plaintiff.
    *Arthur W. Havey* for the defendant.

BRAUCHER, J.   The petitioners filed a petition for the
adoption and change of name of a minor child, who has
resided with them since birth, and the unmarried mother
of the child filed a petition for its return.   A judge of the
Probate Court heard testimony, made findings of fact,
and reserved and reported the evidence and all questions
of law therein for consideration of this court.   G. L.
c. 215, § 13.
    We summarize the findings.   The child was born on
January 8, 1968.   Pursuant to discussions during 1967
and an oral agreement reached on January 9, 1968, the
petitioners on January 11, 1968, signed and delivered to
the mother a written consent to permit her "to see and
visit her said child at any and all reasonable times" at
their residence.   Shortly thereafter they delivered to her
a typed statement and a petition for adoption and change
of name.   On January 22, 1968, she took the documents
to the office of the Boston Legal Aid Society, discussed

them with an attorney there, and signed the typed statement and the consent to adoption on the petition. The attorney attested to both signatures.

The consent to adoption indorsed on the petition is expressly "in accordance with stipulations made by the parties on January 11 and 22, 1968, and filed with this petition." The attested typed statement, dated January 22, 1968, states, "I, . . . of my own free will, consent to, allow . . . [the petitioners] to take my child . . . as their own and I waive my rights to contest an adoption by . . . [them] on condition that . . . [they] will give me visitation rights to see my baby at their residence located at . . . or wherever else it should become."

The mother visited the child frequently until July, 1968. In July, 1968, one of the petitioners asked her to go to the office of their attorney, where she signed a second petition for adoption, which was never filed. She then realized that no adoption petition had yet been filed. She again visited the Boston Legal Aid Society and while there, on July 15, 1968, signed a statement withdrawing her consent to the adoption and a petition to have her child returned to her. The withdrawal of consent was delivered to the Probate Court on July 17, 1968. After July, 1968, she made no visits to see her child. At no time did the petitioners tell her that she could not come to see the child.

On August 5, 1968, the petition for return of the child was filed, and on August 19, 1968, the original adoption petition was filed. In November, 1968, the mother married. The division of child guardianship of the department of public welfare during 1969 filed a report and two supplementary reports, all disapproving the adoption petition. The judge treated the hearing on the merits as an appeal from the department's refusal to approve the petition under G. L. c. 210, § 2A (E). A qualified psychiatrist and neurologist was of opinion that the best interests of the child would be to stay with the petitioners. A guardian ad litem filed a lengthy report and recom-

mended approval of the adoption petition. The judge found that it was in the best interest of the child to stay with the petitioners.

The judge also found that the mother signed her consent in full possession of her faculties and without coercion, although the social worker at the hospital and her mother advised her to have the child adopted. Her consent was fully voluntary, but it was given subject to a stipulation made by the petitioners and the child's mother. One of the petitioners left her job permanently and changed her position in reliance on the consent of the child's mother. There was no misrepresentation or fraud. The judge was "unable to determine whether a consent qualified by the right of visitation on the part of the natural mother constitutes a valid consent as required by General Laws, Chapter 210, section 2."

1. The sole question argued to us is whether, in view of the provision for visitation rights, the mother's consent satisfies the requirements of G. L. c. 210, § 2, as amended through St. 1950, c. 737, § 1: "A decree for such adoption shall not be made, except as hereinafter provided, without the written consent . . . of the mother only of the child, if illegitimate . . . ." If the consent is invalid because conditional, there is no contention that it could be dispensed with under G. L. c. 210, § 3, as amended through St. 1963, c. 71, § 1. See *Adoption of a Minor*, 343 Mass. 292, 296; *Adoption of a Minor*, 357 Mass. 490, 492; *Adoption of a Minor*, 360 Mass. 416, 417. See, however, G. L. c. 210, § 3 (a), as appearing in St. 1972, c. 800, § 2, under which, if a petition for adoption is filed "by a person having the care or custody of a child," the consent "shall not be required if . . . the court hearing the petition finds that the allowance of the petition is in the best interests of the child . . . ."

If, on the other hand, the provision for visitation rights does not invalidate the consent, there is no contention that it is not otherwise in proper form. See *Zalis* v. *Ksypka*, 315 Mass. 479, 482; *Surrender of Minor Children*, 344 Mass. 230, 237. Nor is it contended that a case was

made that the mother was entitled to withdraw her consent if validly given. See *Surrender of Minor Children*, 344 Mass. 230, 234–237; *Revocation of Appointment of a Guardian of a Minor Surrendered for Adoption*, 360 Mass. 81, 86–89. The failure of the department of public welfare to consent to the petition presented no obstacle to the adoption. G. L. c. 210, § 2A (E). *Adoption of a Minor*, 338 Mass. 635, 639. Statute 1972, c. 800, § 1, amends G. L. c. 210, § 2, to prescribe a form of consent including the words "do hereby voluntarily and unconditionally surrender," but that statute does not apply to a consent executed in 1968.

2. If the agreement of the parties was enforceable as a contract, the petition for adoption should be allowed. The petitioners fully carried out their agreement to permit the mother "to see and visit her said child at any and all reasonable times" at their residence. Moreover, when the mother attempted to withdraw her consent, she manifested to them that she would not substantially perform her part of the agreement and thus excused them from further performance. See Restatement: Contracts, §§ 280 (1), 306; *Leigh* v. *Rule*, 331 Mass. 664, 668, and cases cited; *Petrangelo* v. *Pollard*, 356 Mass. 696, 701–702, and cases cited.

3. It is contended that the agreement for visitation rights was inconsistent with the adoption, against public policy, and unenforceable. *Whetmore* v. *Fratello*, 197 Ore. 396. *Stickles* v. *Reichardt*, 203 Wis. 579. Our cases indicate the contrary. "Contracts of that nature are not uncommon. They are recognized as having incidents which, when carried into effect, usually operate as a bar to the rights of the parents on the ground of either contract or estoppel, subject always to the supreme inquiry as to the requirements of the welfare of the child." *Richards* v. *Forrest*, 278 Mass. 547, 555. See *Bottoms* v. *Carlz*, 310 Mass. 29, 30–31, 33; *Adoption of a Minor*, 343 Mass. 292, 298; *Adoption of a Minor*, 360 Mass. 416, 417. We think that the mother in this case sought, not a legal assurance of visitation rights overriding all require-

ments of the welfare of the child, but a practical assurance of the coöperation of the petitioners so long as visitation rights were not contrary to the interests of the child. She got what she sought. If she had not tried to withdraw her consent, a decree of adoption might have been entered incorporating the agreement. Compare *Adoption of a Minor*, 360 Mass. 416, *supra*. Such a decree would not be void. *Moseley* v. *Deans*, 222 N. C. 731, 736. But it would not prevent "the supreme inquiry as to the requirements of the welfare of the child." *Richards* v. *Forrest, supra*. If the agreement had provided for a legal right overriding the welfare of the child, it would at least to that extent be against public policy, but the result would be that the offending provision would be unenforceable, not the consent to adoption. Compare *Quality Finance Co.* v. *Hurley*, 337 Mass. 150, 153–155; G. L. c. 106, § 2–302 (1), inserted by St. 1957, c. 765, § 1; Restatement 2d: Contracts (Tent. draft No. 7, April 15, 1972), § 255. Otherwise the overriding policy serving the welfare of the child would be frustrated. See Kirk, Shared Fate, 156–174 (1964) ; American Academy of Pediatrics, Committee on Adoptions, Identity Development in Adopted Children, 47 Pediatrics 948 (1971) ; Notes, 57 Iowa L. Rev. 171, 180–182 (1971) ; 3 Seton Hall L. Rev. 130, 133–138 (1971).

4. The judge's finding that it would be in the best interests of the child to stay with the petitioners is not attacked. Nevertheless we have reviewed it and find it fully supported by his subsidiary findings and by the evidence. In these circumstances we would not be absolutely bound to take the child from the existing custody, even if the petition for adoption were to be disallowed. *Stinson* v. *Meegan*, 318 Mass. 459, 462, and cases cited. We think, however, that the adoption statutes in force in 1968 were complied with, and that the adoption was not barred by G. L. c. 210, § 2. See *Adoption of a Minor*, 343 Mass. 292, 295–296. We are confirmed in that decision by the fact that under the 1972 amendments to the statutes, although an unconditional consent form is pre-

scribed, the consent could be dispensed with in the present circumstances.

5. The case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*