375 A.2d 944.

STATE *vs.* SALVATORE MACARELLI.

JULY 27, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

694

KELLEHER, J. The instant case raises a novel issue in this jurisdiction: Does an ameliorative statute passed during the pendency of a defendant's appeal necessitate a reduction in the defendant's sentence in conformity therewith?

The defendant (Macarelli) and three others were found guilty by a Superior Court jury of conspiring to corrupt various and sundry horse trainers at the Lincoln Downs Racetrack. The trial justice imposed a 5-year sentence upon Macarelli under authority of G.L. 1956 (1969 Reenactment) §11-1-1 but stayed its execution pending appeal. We affirmed his conviction.[1] Thereafter, Macarelli filed a timely motion in Superior Court for reduction of his sentence, presumably in accordance with Super. R. Crim. P. 35. The trial justice denied his motion. The time for appeal having lapsed, we granted this petition for certiorari.

In order to crystalize the contentions relevant to this petition, we deem it helpful to set forth the applicable statutes. As we have noted, Macarelli was originally sentenced to 5 years under §11-1-1, which provided:[2]

---

[1]*State* v. *Ciulla*, 115 R.I. 558, 351 A.2d 580 (1976). A detailed account of Macarelli's participation in "The 1971 St. Patrick's-Day-Parley" out of which his present conviction followed can be found in that case.

[2]The penalty provisions of this statute have since been amended by P.L. 1975, ch. 283, §1. However, there is no question but that the above-quoted statute was applicable to conspiracy charges at the time sentence was imposed. *State* v. *Giorgi*, 115 R.I. 1, 339 A.2d 268 (1975).

> "Every act and omission which is an offense at common law, and for which no punishment is prescribed by this title, may be prosecuted and punished as an offense at common law. Every person who shall be convicted of any such offense at common law shall be imprisoned for a term not exceeding ten (10) years or be fined not exceeding five thousand dollars ($5,000)."

While Macarelli's appeal was pending before us, the General Assembly at its January 1975 session enacted the following statute:

> "11-1-6. Conspiracy.—Except as otherwise provided by law, every person who shall conspire with another to commit an offense punishable under the laws of this state, shall be subject to the same fine and imprisonment as pertain to the offense which such person shall have conspired to commit, provided, that imprisonment for such conspiracy shall not exceed ten (10) years."

An application of this statute to the underlying substantive offense of the conspiracy (§11-7-9 — corruption of sports participant or official) with which Macarelli was charged would yield a maximum sentence of 2 years or a fine of $1,000. Macarelli claims that the trial justice should have reduced his sentence by employing the more lenient provisions of §11-1-6.

The state, in taking a contrary position, relies on §43-3-23, the so-called general savings statute, which, in its pertinent portions provides:

> "No suit, prosecution or indictment, pending at the time of the repeal of any statute for any offense committed * * * shall in any case be affected by such repeal, but such suit, prosecution or indictment, may be proceeded with, and such act shall be deemed to be in force for the purpose of prosecuting the same to final judgment and execution or sentence, as the case may be."

The state argues that §11-1-6 is an implied repeal of the

applicability of §11-1-1 to conspiracy prosecutions, and, accordingly, §43-3-23 controls. Macarelli, on the other hand, asserts that §11-1-6 merely amends the penalty portion of §11-1-1. Thus he argues that since §43-3-23 speaks in terms of repeal rather than amendment, it is totally inapposite to his attempt to reduce the 5-year sentence. While recognizing that statutes affecting criminal prosecutions must be liberally construed in favor of the defendant, *State* v. *Patriarca,* 71 R.I. 151, 43 A.2d 54 (1945), we accept the state's contention that the savings statute is applicable to this case.

It is obvious that conspiracy charges will now come within the ambit of §11-1-6. Section 11-1-1 provides that it is applicable to common law crimes for which no punishment is prescribed by this title. As §11-1-6 now prescribes a specific punishment for the common law crime of conspiracy, the applicability of §11-1-1 to such proceedings has been impliedly repealed, and the savings statute controls. *See Atchley* v. *State,* 473 P.2d 286 (Okla. Crim. 1970). Having determined that the general savings statute would otherwise apply, we next consider defendant's contention that where the "amendatory act" mitigates punishment, the savings statute should not preclude defendant's possible benefit thereunder.

Clearly, in the absence of a retroactive provision, §11-1-6 would not apply to a conviction reduced to final judgment prior to its passage. In the instant case, the act was passed prior to appellate review but after the jury verdict and imposition of sentence. In our view, a judgment of conviction is not final as long as the case is pending on appeal, and the defendant should have the opportunity to raise a statutory ameliorative change as part of his defense. *State* v. *Harvey,* 281 N.C. 1, 187 S.E.2d 706 (1972); *State* v. *Pardon,* 272 N.C. 72, 157 S.E.2d 698 (1967); *see State* v. *Marzilli,* 111 R.I. 392, 303 A.2d 367 (1973).

At common law if a penal statute was repealed without a reservation of its penalties, all criminal proceedings commenced thereunder abated. General savings statutes were enacted to remedy possible inequities growing out of that rule. *State* v. *Lewis,* 91 R.I. 110, 161 A.2d 209 (1960). Macarelli directs our attention to the cases of *In re Estrada,* 63 Cal. 2d 740, 408 P.2d 948, 48 Cal. Rptr. 172 (1965), and *People* v. *Oliver,* 1 N.Y.2d 152, 134 N.E.2d 197 (1956), for the proposition that these savings statutes should be applied only in instances where punishment or prosecution of a defendant under the repealing, rather than the repealed, statute would result in obvious *ex post facto* problems. *See also State* v. *Pardon, supra.* Although the *ex post facto* problem is one of those areas that the savings statute is clearly meant to remedy, it by no means exhausts its applicability in other areas. *See People* v. *Oliver, supra* at 161 n.3, 134 N.E.2d at 202 n.3. The limited question, then, is what effect the savings statute has upon subsequent statutes mitigating the penalty for the crime charged.

Initially, we should not that our savings statute, barring other considerations, preserves the penalty (sentence) provisions of a repealed law — "and such [repealed] act shall be deemed to be in force for the purpose of *prosecuting the same to final judgment and execution or sentence,* as the case may be." Section 43-3-23 (emphasis added). Thus, defendant's reliance on *In re Estrada, supra,* is of no assistance to his cause. The California Supreme Court in that case based its decision upon an interpretative analysis of its own savings statute. The court took a position that benefited the defendant because the savings statute did not specify under which law the penalty should be imposed as long as the offender was punished. *In re Estrada, supra* at 746-48, 408 P.2d at 953, 48 Cal. Rptr. at 177.

On the other hand, the rationale expressed by the court in the *Oliver* case contains no such equivocation but does represent what to us is a sound judicial philosophy. In *Oliver*, as here, the issue was what effect an ameliorative statute had upon a prosecution which, because of a savings clause, would otherwise be governed by the prior law. Section 43-3-23 clearly governs the instant case. However, there is a caveat to that section as enunciated by §43-3-2, which provides:

> "In the construction of statutes the provisions of this chapter shall be observed, unless the observance of them would lead to a construction inconsistent with the manifest intent of the general assembly, or be repugnant to some other part of the same statute."

Thus, if the application of the savings statute to the instant case would contravene the manifest legislative intent of reducing the penalty for conspiracy, the savings statute should not apply.

The New York Court of Appeals, in discussing the purpose behind the legislative mitigation of criminal penalties, made the following perceptive observations:

> "This application of statutes reducing punishment accords with the best modern theories concerning the functions of punishment in criminal law. According to these theories, the punishment or treatment of criminal offenders is directed toward one or more of three ends: (1) to discourage and act as a deterrent upon future criminal activity, (2) to confine the offender so that he may not harm society and (3) to correct and rehabilitate the offender. There is no place in the scheme. for punishment for its own sake, the product simply of vengeance or retribution. * * * A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than

to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts." *People* v. *Oliver, supra* at 160, 134 N.E.2d at 201-02.

Applying this reasoning to the case at bar, it is apparent that the Legislature thought it inequitable to punish a conspiracy to commit a crime more harshly than the underlying substantive offense itself. Therefore, in light of the legislative decision to mitigate penalties associated with the crime charged, we believe that all those whose cases have not been reduced to final judgment prior to the enactment of the ameliorative statute should be accorded the more lenient treatment provided therein. To hold otherwise, we believe, would amount to nothing more than arbitrary retribution in contravention of the obvious legislative purpose behind the mitigation of the penalty. In such instances the purpose for applying the general savings statute vanishes.

Finally, the state argues that to reduce Macarelli's sentence in conformity with §11-1-6 would be an unconstitutional invasion of the Legislature upon the judiciary's province to sentence criminals. In this regard, our attention is directed to the cases of *State* v. *Taylor,* 108 R.I. 114, 272 A.2d 680 (1971), and *Opinion to the Governor,* 91 R.I. 187, 162 A.2d 814 (1960). A reading of those cases indicates that the ameliorative statutes which the defendants sought to avail themselves of were enacted well after the disposition of their cases had become final. The gist of both cases concerns the propriety of the Legislature's *retroactively* interfering with a final judicial judgment. As we have noted, the status of this case at the time §11-1-6 was enacted was simply not one of final judgment, and accordingly, the Legislature is not retroactively interfering with the judgment. In such an instance, we feel

the defendant should be accorded the opportunity to raise the change in the law to his benefit. *See People* v. *Thomas,* 185 Colo. 395, 525 P.2d 1136 (1974). Thus, we see no constitutional bar to the resentencing of the defendant in conformity with the lesser penalty.

The petition for certiorari is granted, the order denying the petitioner's motion for a reduction of sentence is quashed, and the records certified to us are remanded to the Superior Court with our decision endorsed thereon.

*Julius C. Michaelson,* Attorney General, *Nancy Marks Rahmes,* Special Asst. Attorney General, for state.

*Barbara Hurst, John A. MacFadyen, III,* Public Defenders, for defendant-petitioner.