In re ALICIA S.

No. 99–71–Appeal.

Supreme Court of Rhode Island.

Dec. 26, 2000.

Thomas J. Corrigan, Jr., Steven Merolla, Katherine Merolla, Providence, for plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent, Rochelle S. (respondent), has appealed a Family Court decision denying her motion to enforce an open adoption agreement concerning her biological daughter, Alicia. This case came before the Supreme Court for oral argument on November 14, 2000, pursuant to an order directing the parties to appear in order to show cause why the issues raised on appeal should not be summarily decided. After examining prebriefing statements and hearing the arguments of counsel for the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.

Alicia S. was born in September 1986, and in November 1992, she was committed to the custody of the Department of Children, Youth and Families (DCYF) after respondent pleaded to neglect. Shortly thereafter, Alicia was placed in foster care when respondent entered a residential treatment program for heroin addiction. Over the following two years, DCYF drafted six separate case plans to help respondent address her drug habit and treat her depression, none of which was successfully completed. After a brief attempt at reunification, Alicia was returned to foster care on August 7, 1994. On January 20, 1995, DCYF filed a petition to terminate respondent's parental rights to Alicia, pursuant to G.L.1956 § 15–7–7, on the bases that (1) respondent had a chronic substance abuse problem and her prognosis indicated that the child would not be able to return to her custody within a reasonable period, (2) the child had been placed in the legal custody of the DCYF for more than twelve months, and (3) the father had abandoned or deserted the child. On January 30, 1996, the Family Court terminated the parental rights of the biological father. A hearing was scheduled for November 22, 1996, to terminate respondent's parental rights. On that day, respondent signed a direct consent adoption petition by Alicia's foster parents, with whom Alicia had been living since May 1996.

In the course of the hearing, the Family Court justice found that respondent was executing the consent voluntarily and that she understood the permanency of the proceedings. Furthermore, he referred to an agreement between respondent and the prospective adoptive parents concerning annual visits and correspondence to Alicia and stated that the uncertain legality of such an agreement had been explained to respondent by her attorney. After a brief hearing on December 16, 1996, the petition for adoption of Alicia by her foster parents

was granted. On this occasion, there was no mention of any visitation between respondent and Alicia, nor was an agreement ever reduced to writing.

On November 4, 1997, respondent filed a motion to enforce an open adoption agreement, or, in the alternative, to vacate her consent to the adoption. In her motion, respondent alleged that she had consented to the adoption of Alicia in reliance upon an adoption agreement that included annual visitation. However, the adoptive parents would not allow the annual visit, and respondent asked that the visitation agreement be enforced or the adoption vacated. Subsequently, respondent withdrew the second part of her motion relating to the vacating of her consent, following which it was denied and dismissed. The parties agreed to sever and try separately the issue of whether an enforceable open adoption agreement existed, and on June 22, 1998, the same Family Court justice who had presided over the termination and adoption hearings answered this question in the negative.

Although there was conflicting evidence on how the agreement for postadoptive visitation was reached, the Family Court justice found that the adoptive parents "did consent to an adoption agreement for 'one visit a year with the mom.'" No mention was made of the arrangement at the adoption hearing, but the agreement was confirmed by correspondence from the adoptive parents to the child's Court Appointed Special Attorney (CASA). Noting that § 15–7–14.1, setting forth the conditions for decrees of open adoption, did not become effective until July 3, 1997, and contained no retroactive provisions, the Family Court justice declared the statute inapplicable in the present case. Based on decisions by this Court addressing the finality of adoption decrees, *In re Nicholas*, 457 A.2d 1359, 1360 (R.I.1983) (holding that the right of visitation is among the rights terminated by adoption) and *Ryan v. DeMello*, 116 R.I. 264, 266, 354 A.2d 734, 735 (1976) (holding that visitation rights

may be granted to relatives other than parents only when specifically authorized by statute), the Family Court justice held that respondent was no longer Alicia's parent after the finalized adoption and consequently had no right to visitation. He therefore denied and dismissed her motion to enforce the open adoption agreement.

### Jurisdiction by the Family Court

■ We first address the issue of jurisdiction. In its response to the present appeal, DCYF concluded that the Family Court had no jurisdiction over the issues in this case and urged us to consider the visitation agreement as a separate contract for which respondent should seek enforcement in Superior Court. For the reasons that follow, we believe that the Family Court is the appropriate forum to consider and adjudicate the biological mother's claim.

■ The process of adoption was not recognized at common law, but is a legislatively created arrangement, *In re Lisa Diane G.*, 537 A.2d 131, 132 (R.I.1988), the provisions of which must be " 'strictly construed and literally applied.' " *Puleo v. Forgue*, 610 A.2d 124, 126 (R.I.1992). This Court has repeatedly emphasized that the authority of the Family Court to act in a given situation must be expressly conferred by G.L.1956 § 8–10–3. *See, e.g., Scheuerman v. Woronoff*, 459 A.2d 957, 958 (R.I.1983); *Paolino v. Paolino*, 420 A.2d 830, 833 (R.I.1980). Pursuant to G.L. 1956 § 14–1–5(2), the Legislature has vested exclusive original jurisdiction in proceedings concerning the adoption of children in the Family Court. *In re Joseph*, 420 A.2d 85, 88 (R.I.1980). Once it has been acquired, the jurisdiction over the child continues until the child becomes twenty-one years of age. *Id.* Furthermore, we have stated that "[i]f the adoptive parents are to prevail on their claim of fraud or misrepresentation that has been perpetrated on them, the fraud or the misrepresentation had also been perpetrated on the Family Court." *In re Lisa*

*Diane G.,* 537 A.2d at 133.[1] We held in that case that the Family Court had the "inherent power to adjudicate the claim now put forth by the adoptive parents" because of its exclusive jurisdiction in the subject matter of adoption. *Id.* Although § 15–7–14.1 was not in effect at the time of the termination hearing here, the plain language of the amended statute now clearly confers jurisdiction on the Family Court to hear and determine matters pertaining to postadoption visitation. Section 15–7–14.1 reads as follows:

> "(a) At the time an adoption decree is entered, *the court entering the decree* may, grant postadoption visitation, contact and/or conveyance of information privileges (hereinafter referred to as: 'Postadoption privileges') under subsection (b) to a birth parent who has consented to an adoption or voluntarily terminated the parent-child relationship.
>
> \*\*\*
>
> (f) The court may void or modify a postadoption privileges agreement approved under this section at any time before or after the adoption if the court determines after a hearing that the best interests of the child require the voiding or modification of the agreement." (Emphasis added.)

In the present case, the agreement for visitation was not in writing, nor was it merged into the final adoption decree. The DCYF argued that the facts here are analogous to those in *Riffenburg v. Riffenburg,* 585 A.2d 627 (R.I.1991), wherein this Court established the rule that a "separation agreement that is not merged into a divorce judgment retains the characteristics of a contract." *Id.* at 630. We held that the Family Court did not have jurisdiction to modify such an agreement, but that "the remedy for a party aggrieved by nonperformance of the contract [was] to sue for specific performance in a breach of contract action." *Id.* This case, as well as other cases that set forth propositions of traditional contract theory, and on which DCYF relied in its argument, are not applicable to the instant case, which relates to an adoption proceeding, not a divorce and separation or other contract. To require that such a proceeding be brought in Superior Court as an action for breach of contract would equate the child to property, contrary to the legislative purpose behind placing jurisdiction in family matters in the Family Court. We therefore conclude that the Family Court had the necessary jurisdiction to determine respondent's claim.

### Prospective Application of Statutes

At the time of trial in the Family Court, a postadoption visitation agreement was inconsistent with the then-existing statute on adoption, although, in view of the subsequently enacted amendment, § 15–7–14.1, was not necessarily repugnant to public policy. This Court has explained that "[i]n carrying out our duty as the final arbiter on questions of statutory construction, '[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *State v. Flores,* 714 A.2d 581, 583 (R.I.1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996)). Moreover, when we examine an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998) (quoting *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994)). Adhering to this standard, we have held repeatedly that statutes will be given prospective application unless otherwise provided. *Spagnoulo v. Bisceglio,* 473 A.2d 285, 287 (R.I.1984). Only when the Legis-

---

**1.** This case involved placement for adoption of an emotionally disturbed child without DCYF's informing the adoptive parents that the staff at Bradley Hospital had advised DCYF against such a placement. The adoptive parents sought to have the adoption vacated based on fraudulent conduct or misrepresentation by DCYF.

lature, by express language or necessary implication, manifests its intent that a statute be given retroactive effect, will the courts apply it retrospectively; *Id.; Murphy v. Murphy,* 471 A.2d 619, 623 (R.I. 1984). We therefore must look to the statutory language to ascertain the Legislature's intent. Section 2 of the amendment directs that "[t]his act shall take effect upon passage." P.L.1997, ch. 178, § 2. In the absence of any express language or implicit indication that the statutory amendment should be applied retroactively, we agree with the Family Court justice's decision that any agreement between respondent and adoptive parents was not subject to the provisions of § 15–7–14.1.

The question of enforceability of visitation agreements between biological and adoptive parents has not yet been decided by this Court. In her argument, respondent cited several cases from other states, which although not binding on this Court, are helpful in illuminating the issue of open adoption agreements.[2] We note that five states still hold the view that adoption precludes visitation based on the finality of the adoptive process, even in cases with an existing visitation agreement.[3] Jurisdictions that do permit postadoptive visitation follow the general view that courts may grant such visitation rights to a natural parent to promote the best interests of the adopted child. *See, e.g., Michaud v. Wawruck,* 209 Conn. 407, 551 A.2d 738 (1988); *In re Adoption of a Minor,* 362 Mass. 842, 291 N.E.2d 729 (1973); *Weinschel v. Strople,* 56 Md.App. 252, 466 A.2d 1301 (Ct.Spec.App.1983). In reviewing the Family Court justice's decision in the present case, we take into consideration the precedent at the time of Alicia's adoption. The then-existing case law interpreted the legislative purpose of the statu-

tory process of adoption as creating "a stable environment in which the child can grow and develop into a healthy and productive member of society." *In re Christine,* 121 R.I. 203, 206, 397 A.2d 511, 512 (1979). In furtherance of this aim, this Court stated "that the physical welfare and emotional stability of [the natural parents, the adoptive parents, and the child] require that there be some assurance as to the finality of an adoption decree." *In re Adoption of a Minor Child,* 109 R.I. 443, 451, 287 A.2d 115, 119 (1972). In the case of *In re Nicholas,* 457 A.2d at 1360, we held that parents whose parental rights are terminated have no further legal rights in respect to the adopted child. Here, respondent consented to the adoption of her biological daughter, which act concluded her status as the child's parent. Once the adoption had taken place, all the respondent's parental rights were obliterated and any alleged agreement vanished.

## Conclusion

Therefore, we hold that the Family Court had jurisdiction over the respondent's claim and that the agreement was unenforceable. Consequently, we deny and dismiss the respondent's appeal and affirm the judgment of the Family Court, to which we return the papers in this case.

---

**2.** For a thorough review of the issue, see Danny R. Veilleux, Annotation, *Postadoption Visitation by Natural Parent,* 78 A.L.R.4th 218 (1990 & Supp.).

**3.** *See, e.g., In re Adoption of Hammer,* 15 Ariz. App. 196, 487 P.2d 417 (1971) (holding that such an agreement conflicted with the state's adoption laws and was detrimental to the best interests of the adopted children); *Lowe v. Clayton,* 264 S.C. 75, 212 S.E.2d 582 (1975) (reasoning that pursuant to statutory provisions, a final adoption terminated all rights and obligations of the natural parent).