State                           :

v.                              :

John Whiting.               :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State :

v. :

John Whiting. :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.** The defendant, John Whiting, appeals from a judgment of conviction for felony larceny in violation of G.L. 1956 §§ 11-41-1 and 11-41-5 and criminal solicitation in violation of G.L. 1956 § 11-1-9. For the reasons set forth in this opinion, we affirm the judgment of conviction.

## I

## Facts and Travel

The critical facts surrounding defendant's convictions are not in dispute in this appeal. We therefore proceed to trace only the series of events necessary to the disposition of the legal issue at hand.

On November 22, 2011, defendant was charged by information with stealing over $500 in violation of §§ 11-41-1 and 11-41-5 (count 1) and soliciting another to receive stolen goods in violation of § 11-1-9 (count 2).[1] The information was later amended on May 11, 2012, to reflect the appropriate dates and locations when and where the alleged criminal activity took place. Subsequently, on June 8, 2012, the Governor signed into law an act amending § 11-41-5 to increase the threshold for felony larceny from $500 to $1,500. See P.L. 2012, ch. 176, §§ 1, 3.

---

[1] A third count, soliciting another to obstruct the judicial system in violation of G.L. 1956 § 11-1-9, was dismissed by the trial justice after the state's case-in-chief.

- 1 -

Soon afterwards, defendant's case proceeded to a bench trial in the Providence County Superior Court starting on June 18, 2012, without either party or the trial justice being aware of the amendment to the statute. After the close of both the state's and defense's cases-in-chief, but before the trial justice rendered his decision, defense counsel apprised the trial justice of the amendment to the statute. Defense counsel then sought to have the larceny count amended and the solicitation charge dismissed or, in the alternative, amended. The state demurred, arguing that any change in the law should be applied only prospectively and that defendant, who had already been charged by the time the law was amended, should not benefit from the legislative change.

The trial justice agreed with the state and proceeded with the counts as charged. Both parties gave their closing arguments, and the trial justice rendered his decision from the bench on July 2, 2012. The trial justice found that the evidence was clear that the amount of money in question was $714. Accordingly, the trial justice found that defendant was guilty of having committed larceny over $500 (count 1) and having solicited another to commit a felony (i.e., receive stolen goods over $500) (count 2).

Just prior to sentencing on September 14, 2012, the trial justice entertained a motion to reconsider his decision denying defendant's request to amend the charges in light of the changes to § 11-41-5. The motion was denied, and the trial justice proceeded to sentencing. The defendant was sentenced to five years imprisonment, with six months to serve, the remaining four and one-half years suspended with probation on count 1, and the same sentence to run concurrently on count 2.[2] A final judgment of conviction was later entered, and thereafter defendant timely appealed.

---

[2] The sentences were stayed pending appeal.

On appeal, defendant argues that the legislative intent behind the amendment to § 11-41-5, increasing the threshold for felony larceny from $500 to $1,500 was to reclassify offenses under $1,500 from felonies to misdemeanors. Further, he argues that the amendment was ameliorative in nature and should inure to the benefit of defendants, including those whose cases were still pending on appeal when the statute was amended. The state counters, arguing that the general savings clause, G.L. 1956 § 43-3-23,[3] permits the prosecution and sentencing of defendant in accordance with the pre-amendment version of § 11-41-5.

## II

## Standard of Review

It is well settled that "we review questions of statutory interpretation de novo." State v. Morris, 92 A.3d 920, 924 (R.I. 2014) (quoting Campbell v. State, 56 A.3d 448, 454 (R.I. 2012)). In conducting such a review, "our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." State v. Oster, 922 A.2d 151, 160 (R.I. 2007) (quoting Webster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001)).

## III

## Discussion

Under the common law rule of abatement, in the absence of a savings clause, the unqualified repeal of a criminal statute resulted in the discharging of all proceedings under the repealed statute. The first reported case in Rhode Island to apply the rule of abatement was State v. Fletcher, 1 R.I. 193 (1846). In Fletcher, the defendant committed an offense in December of

---

[3] General Laws 1956 § 43-3-23 provides:

> "No suit, prosecution, or indictment pending at the time of the repeal of any statute for any offense committed or for the recovery of any fine, forfeiture, or penalty incurred under the statute so repealed shall in any case be affected by the repeal, but the suit, prosecution, or indictment may be proceeded with, and the act shall be deemed to be in force for the purpose of prosecuting the act to final judgment and execution or sentence, as the case may be."

1845, but was not indicted until March of 1846. In the interim, the statute under which the defendant had been charged had been amended. Accordingly, this Court quashed the indictment.

In response to the application of the rule of abatement, the General Assembly enacted a general savings clause set forth in § 43-3-23. The effect of Rhode Island's general savings clause was first examined in State v. Lewis, 91 R.I. 110, 114, 161 A.2d 209, 212 (1960). In Lewis, 91 R.I. at 112, 161 A.2d at 210, the defendant allegedly operated an automobile while under the influence of intoxicating liquor in violation of G.L. 1956 § 31-27-2 on May 22, 1959. On September 1, 1959, § 31-27-2 was amended. In light of this amendment, on September 23, 1959, the defendant moved to dismiss the case arguing that the provisions of the new statute were different from what he had been charged with and pointing out that the repealing act did not contain a specific savings clause. Lewis, 91 R.I. at 112, 161 A.2d at 211. The state argued that the amendment did not create a new and different offense and that, alternatively, § 43-3-23 authorized maintenance of the prosecution under the pre-amended form of the act. Lewis, 91 R.I. at 113-14, 161 A.2d at 211-12.

The Court found that the state's second argument regarding the general savings clause was dispositive and therefore, only addressed that argument. Lewis, 91 R.I. at 114, 161 A.2d at 212. The Court stated that the purpose of a savings clause was to abrogate the common law rule of abatement such that a savings clause "authorize[s] the continuance of prosecutions that were pending at the time of the repeal of the prior act." Id. at 115, 161 A.2d at 212. In particular, the Court stated that the general savings clause was enacted "to save the necessity of the burdensome formality of attaching an identical saving[s] clause to all repealing legislation." Id. (quoting State ex rel. Ackerly v. Shepherd, 210 N.W. 476, 476 (Iowa 1926)).

While we have recognized that certain ameliorative statutes may be applied retroactively, such retroactive application may occur only if applying the general savings clause "would be clearly repugnant to the express provisions of the repealing statute." Lewis, 91 R.I. at 115, 161 A.2d at 212. We have further clarified that such a determination "should be considered on a case-by-case basis." State v. Mullen, 740 A.2d 783, 786 (R.I. 1999). In making that determination, we must consider the language of the repealing statute and the nature of the amendment. Additionally, we must always be cognizant of the general presumption that "statutes will be given prospective application unless otherwise provided." State v. Briggs, 58 A.3d 164, 168 (R.I. 2013) (quoting In re Alicia S., 763 A.2d 643, 646 (R.I. 2000)).

In State v. Babbitt, 457 A.2d 1049, 1055 (R.I. 1983), the defendant was charged in January of 1980 with transporting another for indecent purposes in violation of G.L. 1956 § 11-34-5. While his charges were pending, the statute was amended "by adding the requirement that the proscribed conduct be conducted 'for pecuniary gain.'" Babbitt, 457 A.2d at 1055 (quoting § 11-34-5). Because the scope of the amended statute did not cover the defendant's conduct, his convictions on those counts were vacated. Id. at 1056.

Similarly, in Mullen, 740 A.2d at 784, the defendant was charged with committing abominable and detestable crimes against nature "with mankind" pursuant to G.L. 1956 § 11-10-1. While his charges were pending, the statute was amended to remove the "with mankind" component from the ambit of proscribable conduct, thereby effectively decriminalizing sodomy. Mullen, 740 A.2d at 784-85. On appeal, the majority[4] held that "the trial justice was correct in determining that it was the manifest intention of the Legislature to decriminalize the act of

---

[4] A vigorous dissent by two justices of this Court was put forth in State v. Mullen, 740 A.2d 783 (R.I. 1999). The dissent posited that application of the general savings clause would not have been "inconsistent with nor repugnant to the General Assembly's manifest intention to decriminalize sodomy as of the effective date of the repeal * * *." Id. at 787 (Flanders, J., with whom Bourcier, J., joins dissenting).

- 5 -

sodomy between consenting adults." Id. at 786. Accordingly, the majority reasoned that it would be "inconsistent with the intent of the Legislature to prosecute acts that are no longer criminal offenses," and upheld the dismissal of the counts arising under the repealed statute. Id. At bottom, the majority opined that it would be "fundamentally unfair to prosecute an individual for prior conduct that would now not constitute a violation of law." Id. Unlike the circumstances in Babbitt and Mullen, here, at all relevant times, defendant's conduct was, and remains, criminal. There was no intention to pardon the type of act committed by defendant.

The defendant's reliance on State v. Macarelli, 118 R.I. 693, 375 A.2d 944 (1977), also misses the mark. In Macarelli, 118 R.I. at 694, 375 A.2d at 945, the defendant had been found guilty by a Superior Court jury of conspiring to corrupt horse trainers. The underlying substantive offense, G.L. 1956 § 11-7-9 "Corruption of sports participant or official," carried a maximum sentence of two years imprisonment or a fine of $1,000. Macarelli, 118 R.I. at 695, 375 A.2d at 946. Notwithstanding this maximum, the defendant was sentenced to five years imprisonment under G.L. 1956 § 11-1-1, which at the time provided:

> "Every act and omission which is an offense at common law, and for which no punishment is prescribed by this title, may be prosecuted and punished as an offense at common law. Every person who shall be convicted of any such offense at common law shall be imprisoned for a term not exceeding ten (10) years or be fined not exceeding five thousand dollars ($5,000)." Macarelli, 118 R.I. at 695, 375 A.2d at 945 (quoting § 11-1-1).

Section 11-1-1 is a catchall that preserves common law offenses thereby "mak[ing] every act which is an offense at common law punishable in Rhode Island." State v. LaPlume, 118 R.I. 670, 678, 375 A.2d 938, 942 (1977). At the time the defendant completed the unlawful agreement giving rise to the conspiracy charge, conspiracy was recognized as an offense at common law. See State v. Giorgi, 115 R.I. 1, 5, 339 A.2d 268, 271 (1975). However, because the offense had not been specifically codified, "an indictment for common law conspiracy could

be obtained only pursuant to the statutory authority set forth in § 11-1-1." LaPlume, 118 R.I. at 678, 375 A.2d at 942.

In 1975, while the defendant's appeal in Macarelli was pending before this Court, § 11-1-6 was enacted by P.L. 1975, ch. 283, § 2 which provides:

> "Except as otherwise provided by law, every person who shall conspire with another to commit an offense punishable under the laws of this state shall be subject to the same fine and imprisonment as pertain to the offense which the person shall have conspired to commit, provided that imprisonment for the conspiracy shall not exceed ten (10) years."

Not only did the enactment specifically codify conspiracy offenses, but it also fundamentally altered the sentencing scheme for conspiracy prosecutions. In light of the enactment, the Court determined that "it is apparent that the Legislature thought it inequitable to punish a conspiracy to commit a crime more harshly than the underlying substantive offense itself." Macarelli, 118 R.I. at 699, 375 A.2d at 947. Consequently, the Court reasoned that the defendant should be afforded "the more lenient treatment." Id.

It is evident that our opinion in Macarelli hinged on equitable considerations unique to the circumstances present in that case. That is, the legislative judgment that as a general matter, it would be "inequitable to punish a conspiracy to commit a crime more harshly than the underlying substantive offense itself." Macarelli, 118 R.I. at 699, 375 A.2d at 947. Such considerations are not present here, wherein the amendment in question concerns a mere increase in the monetary threshold. There is no general equitable principle embodied in the amendment. Neither was the amendment a seismic, qualitative shift altering the fundamental essence of larceny prosecutions such that applying the old statute would be "clearly repugnant to the express provisions of the repealing statute." Lewis, 91 R.I. at 115, 161 A.2d at 212.

Additionally, our determination that the amendment to § 11-41-5 should not be applied retroactively[5] is bolstered by our observation that recently, in State v. Kalil, 107 A.3d 343 (Conn. 2014), the Connecticut Supreme Court addressed a nearly identical issue arising out of facts substantially similar to the case presently before us.[6] There, the defendant committed larceny on January 27, 2009. Id. at 356. The value of the stolen goods was approximately $8,000, which at the time of the offense would have qualified as second-degree larceny. Id. Before the defendant was convicted or sentenced, however, the larceny statute was amended to raise the minimum value for second-degree larceny from $5,000 to $10,000, which would reduce the defendant's crime from second to third-degree larceny. Id.

The court rejected the defendant's argument that the amended statute should apply. Kalil, 107 A.3d at 361. The court noted that the amended law had an effective date after the time when the defendant committed the larceny. Id. at 360. Additionally, the court pointed out that the amended law did not contain "any express language in the provision referring to its retroactive application." Id. at 360-61. Further, the court expressed its concern that inequities could result if defendants who commit crimes on the same day, but whose cases proceed to trial at different times, might be subject to varying laws. Id. at 359.

We find the reasoning of the Connecticut Supreme Court in Kalil persuasive, especially given the similarities to the case under review. Accordingly, in light of that reasoning and review of our own precedent, we hold that the trial justice was correct in determining that the

---

[5] We are mindful that the legislation indicates that the amendment "shall take effect upon passage." P.L. 2012, ch. 176, § 3 (effective June 8, 2012).

[6] This is not the first occasion upon which we have considered the persuasive force of Connecticut cases in interpreting the applicability of our general savings clause. In State v. Lewis, 91 R.I. 110, 115, 161 A.2d 209, 212 (1960), the first case in which we examined the applicability of our general savings clause, we relied on authority from Connecticut, noting that "[t]he general saving statutes in effect in Connecticut are substantially similar to our statute."

general savings clause is applicable and that the changes to § 11-41-5 should not be applied retroactively.  This comports with our well-established precedent that "statutes will be given prospective application unless otherwise provided."  Briggs, 58 A.3d at 168 (quoting In re Alicia S., 763 A.2d at 646).

## IV

## Conclusion

For the foregoing reasons, we affirm the judgment of conviction.  The papers shall be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        State v. John Whiting.

**CASE NO:**        No. 2012-362-C.A.
(P2/11-3234A)

**COURT:**        Supreme Court

**DATE OPINION FILED:**   May 27, 2015

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

                For State:  Aaron L. Weisman
                        Department of Attorney General

                For Defendant:  John B. Reilly, Esq.