January 16, 2024

**Supreme Court**

No. 2022-296-C.A.
(K2/19-567A)

State                         :

v.                         :

Somayina Odiah.                         :

NOTICE:    This opinion is subject to formal revision
before publication in the Rhode Island Reporter.  Readers
are requested to notify the Opinion Analyst, Supreme
Court of Rhode Island, 250 Benefit Street, Providence,
Rhode Island 02903, at Telephone (401) 222-3258 or
Email:    opinionanalyst@courts.ri.gov,    of    any
typographical  or  other  formal  errors  in  order  that
corrections may be made before the opinion is published.

State                    :

v.                      :

Somayina Odiah.          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**   The defendant, Somayina Odiah (defendant or Odiah), appeals from a judgment of conviction entered after a jury-waived trial in the Superior Court.  The defendant was found guilty on one count of indecent solicitation of a child in violation of G.L. 1956 § 11-37-8.8.  This case came before the Supreme Court on November 29, 2023, pursuant to an order directing the parties to show cause why the issue raised in this appeal should not be summarily decided.  After examining the memoranda and arguments presented by the parties, we conclude that cause has not been shown and proceed to decide the appeal at this time.  For the reasons set forth in this opinion, we affirm the judgment of conviction.

- 1 -

On July 16, 2019, defendant began messaging on an online chat application called Grindr with someone who he believed was a fourteen-year-old male transitioning to a female, named "Alice."[1] At the time of this incident, defendant was forty-one years old. Unbeknownst to defendant, the Grindr account was actually created and staffed by Corporal Luke Schatz (Corporal Schatz) of the Rhode Island State Police Computer Crimes Unit and the Internet Crimes Against Children Task Force.[2]

During the one-day bench trial, Corporal Schatz was the only witness to provide testimony. The trial record also consisted of, *inter alia*, forty-three pages of messaging on the Grindr application between defendant and "Alice," an extraction of defendant's telephone that revealed additional texting with "Alice," a recorded telephone call between defendant and "Alice," and defendant's state police interview after his arrest.

At trial, Corporal Schatz explained that, as part of the undercover investigation, the state police created a fictitious profile on Grindr, but never initiated contact with defendant. In order to create an account on Grindr, a user must enter a

---

[1] Because the record contains female pronouns when describing "Alice," we adopt female pronouns herein.

[2] The record suggests that, at the time of this incident, Corporal Schatz may have held the title and position of detective.

date of birth indicating that he or she is at least eighteen years of age; but as Corporal Schatz noted during his testimony, the application "does not require verification for the date of birth." When asked, "[s]o anyone can go in and just pick an age that's over 18," Corporal Schatz responded, "[e]xactly, yes." During these undercover investigations, Corporal Schatz expounded, when a user contacts a fictitious profile, the undercover officer responds on behalf of the fictitious profile. Corporal Schatz added that the undercover officer will indicate, within the first few messages, that the fictitious user is somewhere between the ages of twelve and fourteen. Corporal Schatz further testified that, after the undercover officer indicates that the fictitious user is fourteen years of age or younger, the user will typically cease communications. That was not the case here.

At 12:09 p.m. on July 16, 2019, "Alice" received an unsolicited message on Grindr from another user named "Paul." It was later discovered—and it is undisputed—that defendant was the user of the Grindr account named "Paul." The defendant and "Alice" exchanged various messages until 12:20 p.m., whereupon defendant inquired, "Are you on snapchat[?]" "Alice" answered, "Nah, I'm 14 and my mom doesn't let me have that…I'm using this without her knowing. lol ok please don't tell[.]" The defendant responded to "Alice's" message, asking, "Are you trans[gender]?," whereupon "Alice" replied in the affirmative. The messaging between "Alice" and defendant continued.

At 12:22 p.m., defendant messaged, "But you are very young for me lol[.]" "Alice" responded, "Do u like younger?," and defendant rejoined, "Not ever been with a lady as young as you lol[.]"  The messaging continued for approximately another twenty minutes, alternating between various topics including defendant asking "Alice" are "you still a virgin," talking about the size of body parts, and noting that "Alice" is "still very young[.]"  At 12:40 p.m., defendant messaged, "Do you want us to meet someday[?]"  It is notable that defendant initiated the conversation with "Alice" concerning meeting in person.   "Alice" answered in the affirmative and indicated that her mother was away from the house for most of the week, whereupon defendant sent two consecutive messages to "Alice" asking: "You want me to come over" and "Tonight[.]"

Three minutes later, defendant initiated the messaging that formed the basis of the criminal information:

> Defendant:   "You like a big black cock"
>
> Defendant:   "You could play with it"
>
> "Alice":      "I'd like that…what else?"  (Emojis omitted.)
>
> Defendant:   "In your mouth"
>
> Defendant:   "Seriously"
>
> Defendant:   "Are you serious about us meeting?"
>
> "Alice":      "Yea def[initely]"

- 4 -

> "Alice": "R u"
>
> Defendant: "Yeah but I don't want your mum to mistakenly come back home and see me with you lol"
>
> "Alice": "Lolol[3] that would be horrible! She's gone until Thursday, she only calls to check in"

While we deem it unnecessary to continue describing the prurient messaging, it suffices that in rendering the verdict, the trial justice appropriately described "[t]he evidence in this case [a]s chock full of support for the fact that the defendant urged or requested that Alice engage in a third degree sexual encounter with Paul, that being the defendant."

The Grindr messaging ended at 2:02 p.m.; however, defendant began texting "Alice" at 1:58 p.m. and, soon after, arranged for a telephone conversation. At 2:21 p.m., "Alice" called defendant.[4] During the recorded telephone conversation the following colloquy ensued:

> Defendant: "Wow, you, you are 14"
>
> "Alice": "Yeah"
>
> Defendant: "You're very young. Very, very, very young."
>
> "Alice": "I am 14. But mature for my age."

---

[3] It is our understanding that "lolol" stands for "lots of laughing out loud."

[4] Corporal Schatz spoke through a voice modulator that altered his voice to sound like a juvenile.

The telephone conversation ended at 2:24 p.m., and Odiah and "Alice" continued texting intermittently for the remainder of the day and evening.

The following morning, defendant initiated texting with "Alice." The defendant expressed that "I feel I'm taking advantage of you!" When "Alice" replied that she could make her own decisions, defendant countered that "legally you can't for now, until you are 18[.]" The defendant noted a concern regarding meeting at "Alice's" home and potentially being spotted by neighbors; "Alice" responded, "[t]hat's true…but you know I'm 14…maybe a better idea to meet somewhere first[?]" The defendant and "Alice" made arrangements to meet at Walmart in Warwick, Rhode Island. The defendant drove to the Walmart parking lot; and upon arriving, he was taken into custody and later charged with one count of indecent solicitation of a child in violation of § 11-37-8.8.

At the state police barracks, defendant voluntarily participated in an interview with Corporal Schatz and another member of the state police. During this interview, defendant repeatedly acknowledged that he thought "Alice" was fourteen years of age. Odiah also claimed on multiple occasions that he had no intention of engaging in any type of sexual contact with "Alice." Nonetheless, defendant acknowledged during the state police interview that "[i]t looks bad from—from the beginning to the end, everything looks very, very, very bad."

At the conclusion of the one-day bench trial, defendant moved to dismiss the criminal information, claiming that no evidence had been submitted that "Alice" was over the age of fourteen. The trial justice denied the motion, citing *State v. Jordan*, 528 A.2d 731 (R.I. 1987), and *In re Edward*, 441 A.2d 543 (R.I. 1982). Thereafter, the trial justice referenced the third-degree sexual assault statute and the indecent solicitation of a minor statute, *see infra*, and found defendant guilty of the charged offense. Odiah was sentenced to five years at the Adult Correctional Institutions, with six months to serve in home confinement and the balance of time suspended, with probation. Additional special conditions were also imposed. This appeal ensued.

**Standard of Review**

In a jury-waived criminal proceeding, a defendant may move to dismiss based upon the legal sufficiency of the evidence. *State v. Silvia*, 798 A.2d 419, 424 (R.I. 2002). The trial justice is "required to weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party." *State v. Harris*, 871 A.2d 341, 346 (R.I. 2005) (quoting *State v. McKone*, 673 A.2d 1068, 1072-73 (R.I. 1996)). If the trial justice determines that the trial evidence is sufficient to establish guilt beyond a reasonable doubt, the motion to dismiss must be denied. *Id.*

This Court "will not reverse the findings of a 'trial justice sitting without a jury unless it can be shown that he or she overlooked or misconceived relevant and material evidence or was otherwise clearly wrong.'" *Harris*, 871 A.2d at 346 (quoting *State v. Traficante*, 636 A.2d 692, 694 (R.I. 1994)). Questions regarding statutory interpretation, however, are reviewed *de novo*. *State v. Whiting*, 115 A.3d 956, 958 (R.I. 2015). "In conducting such a review, 'our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Id.* (quoting *State v. Oster*, 922 A.2d 151, 160 (R.I. 2007)).

**Analysis**

Section 11-37-8.8(a) provides that "[a] person is guilty of indecent solicitation of a child if he or she knowingly solicits another person under eighteen (18) years of age or one whom he or she believes is a person under eighteen (18) years of age for the purpose of engaging in an act of prostitution *or in any act in violation of chapter 9, 34, or 37 of this title*." (Emphasis added.) Among the offenses referenced within the statute concerning indecent solicitation of a child is § 11-37-6, which in July 2019 provided that a person is guilty of third-degree sexual assault if "he or she is over the age of eighteen (18) years and engaged in sexual penetration with another

- 8 -

person *over the age of fourteen (14) years* and under the age of consent, sixteen (16) years of age."[5]  (Emphasis added.)

On appeal, defense counsel presents a passionate, and creative, argument that the trial justice erred in denying the motion to dismiss because the state failed to present a date of birth for "Alice" or otherwise failed to prove beyond a reasonable doubt that "Alice" was "over fourteen" years of age on the date of the charged offense, July 16, 2019.  Following careful consideration, we disagree.

In *In re Edward*, this Court examined whether the Family Court had subject-matter jurisdiction when the respondent's date of birth was May 17, 1962, and the offense date was May 16, 1980, the day immediately preceding the respondent's eighteenth birthday.  *See In re Edward*, 441 A.2d at 543.  We observed that, because the Family Court had exclusive jurisdiction over "matters relating to delinquent and wayward * * * children," and because a "child" had been defined as "a person under eighteen (18) years of age," the Family Court's jurisdiction was dependent upon "whether [the respondent] was a 'child' upon the date when the alleged offense took place."  *Id.* (brackets omitted) (quoting G.L. 1956 (1969 Reenactment) § 8-10-3, as amended by P.L. 1980, ch. 54, § 1 and G.L. 1956 (1981 Reenactment) § 14-1-3(C)).  In examining that issue, we observed that "at common law a person reaches his or

---

[5] The third-degree sexual assault statute was amended in 2022.  *See* P.L. 2022, ch. 153, § 1; P.L. 2022, ch. 154, § 1.  These amendments are not material to the issue before this Court.

her next year in age *at the first moment of the day prior to the anniversary date of his or her birth*." *Id.* (emphasis added). "Since [the respondent] was born on May 17, 1962," we concluded, "he attained the age of eighteen on the first moment of May 16, 1980, the day before the anniversary date of his birth." *Id.* at 544.

Several years later, this Court examined a similar issue concerning the precursor to the present-day § 11-37-6, the statute at issue in this case. *See Jordan*, 528 A.2d at 732. In *Jordan*, the defendant was convicted of one count of first-degree child-molestation sexual assault. *Id.* at 731. At the time of the charged offense, the statute provided that "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person thirteen (13) years of age or under." *Id.* at 732 (quoting § 11-37-8.1). Because the complainant was thirteen years and ten months old, the defendant argued that the victim was not "thirteen years of age or under" within the meaning of first-degree child molestation sexual assault. *Id.*

We observed that, under chapter 37 as it existed in 1979, "sexual penetration of a person '*under thirteen (13) years of age*' constituted first-degree sexual assault" and "[s]exual penetration of a person '*over the age of thirteen (13) years* and under the age of consent, sixteen (16) years of age' constituted third-degree sexual assault." *Jordan*, 528 A.2d at 732 (emphases added). Thus, we explained, the statutory scheme prohibited sexual penetration of persons "under thirteen" and "over

thirteen," but there was no statutory prohibition for "sexual penetration of persons *exactly* thirteen years of age." *Id.* at 732-33 (emphasis added). In 1981 the General Assembly addressed this potential one-day gap and amended first-degree sexual assault to apply to persons "*thirteen (13) years of age* or under." *Id.* at 733 (emphasis added) (quoting P.L. 1981, ch. 119, § 1). At that time, the General Assembly made no other changes to the first-degree sexual assault statute, nor did the General Assembly amend the third-degree sexual assault statute. *Id.*

Based upon the foregoing, we concluded in *Jordan* that "the only harmonious interpretation of these statutes would be one that construed thirteen years or under to include only those victims who had reached the *day prior to their thirteenth birthday or were under that age.*" *Jordan*, 528 A.2d at 734 (emphasis added). We further explicated that "[t]he provisions over thirteen but under sixteen include those victims who were *beyond the day just prior to their thirteenth birthday* but had not yet reached the day prior to their sixteenth birthday." *Id.* (emphasis added). Thus, we summarized:

> "Persons who are more than exactly thirteen years of age are included within the [third-degree sexual assault] provisions of § 11-37-6. Therefore, we conclude that § 11-37-8.1 [the provision for first-degree child molestation sexual assault] applies to those persons under thirteen years of age and to those who are exactly thirteen years of age as defined by this [C]ourt in *In re Edward*, 441 A.2d 543 (R.I. 1982). Upon and after the thirteenth anniversary of a person's birth, he or she is 'over thirteen' within the meaning of § 11-37-6." *Id.*

- 11 -

Although the third-degree sexual assault provision has since been amended to change the threshold age from thirteen to fourteen years of age, *In re Edward* and *Jordan* still control our analysis. The evidence is undisputed that "Alice" is a fictitious person with no date of birth; "Alice" has never had a birthday. The evidence is also undisputed that defendant repeatedly acknowledged that he understood "Alice" to be fourteen years old. As noted, *supra*, Odiah expressed his understanding of "Alice's" youthfulness in two different forms of media on the date of the offense—the Grindr messaging and the recorded telephone call. The following day, Odiah continued to acknowledge that "Alice" was fourteen years of age when he texted "I feel a little worried? I feel I'm taking advantage of you[,]" and "I know you can [make your own decisions] but legally you can't for now, until you are 18." During this texting conversation "Alice" also reminded defendant—as defendant was making arrangements to meet "Alice" in person—"you know I'm 14[.]" Odiah also repeatedly acknowledged during the state police interview that he believed "Alice" was fourteen years old. The evidence is clear that defendant was planning to meet a fourteen-year-old child, with whom defendant had communicated regarding sexual penetration.

Even assuming the factual veracity of the defendant's argument that "Alice" could have turned fourteen years of age on July 16, 2019—when "Alice" expressed that she was fourteen years old—we have recognized that "a person reaches his or

her next year in age at the first moment of the day *prior to the anniversary date of his or her birth.*"  *In re Edward*, 441 A.2d at 543 (emphasis added).  Thus, even assuming "Alice" turned fourteen years of age on the date of the charged offense (July 16, 2019), consistent with *In re Edward* and *Jordan*, "Alice" would have been *exactly* fourteen years of age on July 15, 2019.  *See Jordan*, 528 A.2d at 734 ("Upon and after the thirteenth anniversary of a person's birth, he or she is 'over thirteen' within the meaning of § 11-37-6.").

## Conclusion

For the reasons stated herein, the trial justice did not err when he denied the motion to dismiss, which claimed that no evidence had been submitted that "Alice" was "over the age of fourteen."  *See* § 11-37-6.  Accordingly, the defendant's judgment of conviction is affirmed.  The papers in this case are remanded to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Somayina Odiah. |
| **Case Number** | No. 2022-296-C.A. (K2/19-567A) |
| **Date Opinion Filed** | January 16, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Luis M. Matos |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Virginia M. McGinn <br> Department of Attorney General <br> For Defendant: <br><br> Kara Hoopis Manosh <br> Rhode Island Public Defender |